## M. H. BACON et al. *vs.* J. W. GRAY.

D., in 1823, conveyed land and slaves to C., in trust for his married daughter, Mrs. G., and her child, then living, and such other children as she might have. She died in 1836, leaving but one child. One of the slaves embraced in the conveyance to C. was sold by the husband of Mrs. G., in 1826. The husband and the trustee afterwards died. In 1846, which was within three years after he became of age, the son of Mrs. G. filed his bill for the recovery of the slave. The statute of limitations was set up as a defence to the bill ; *held*, that the remedy was not barred. CLAYTON, J., dissenting.

*Semble*, that in a case of a mere money demand, the remedy for the recovery of which is barred by the neglect of the deceased creditor's administrator to sue within the time prescribed by the statute of limitations, the heirs of the deceased creditor will also be barred, notwithstanding their infancy ; *aliter*, however, in cases of personal property, to which the distributees have a title by law, subject to the rights of administration. CLAYTON, J., dissenting upon the latter proposition.

The meaning of the saving in the statute of limitations is, that the right of persons laboring under disabilities shall not suffer in consequence of such disabilities ; and, therefore, where personal property of an infant is illegally disposed of, or permitted to pass into the hands of persons who are not entitled to it, by a guardian, or other trustee, the statute of limitations does not begin to run against the infant until he is twenty-one years of age, and he may recover in a case where an action by the guardian or other trustee would be barred. CLAYTON, J., dissenting.

ON appeal from the northern district vice-chancery court at Carrollton ; Hon. Henry Dickinson, vice-chancellor.

The facts of the case are sufficiently stated in the opinion of the court.

*Sheppard*, for appellant.

The bill is barred by the statute of limitations.

The deed of trust vested a joint estate in the husband, H. L. Gray, and his son, J. L. Gray. In the declaration of the trust as to the real estate conveyed by the deed, the grantor

Bacon et al. *v.* Gray.

uses the following language: "For the said Mary Gray, her child, and such other children as she may have, for their sole use and benefit;" but in a subsequent part of the same deed is added: "And by these presents said Joel Dyer do give to B. Coleman, as trustee as aforesaid, for said Mary H. Gray and child, and such other children as she may have, for their sole use and benefit and behoof forever, certain negro slaves."

The expression, "their use and benefit," cannot create a separate estate, but it must be taken as a gift to the husband jointly with the other donees; more especially must this construction be adopted, when it is seen the grantor well understood what words were necessary to create such separate estate.

In *Kensington* v. *Dolland*, the language of the deed is the same as that used in this case, the deed containing two limitations identical in expression with the two used here; and the court held that the marital rights of the husband were not excluded. See 2 Mylne & Keene, 184; 7 Eng. Cond. Ch. R. 322; *Massey* v. *Parker*, Ib. 317.

The court has decided that this language cannot create a separate estate in the wife. 2 S. & M. 185.

The rule is well settled in the case of joint owners, that if one or more are under no disability, the statute will run against all. *Marsteller et al.* v. *M'Clean*, 7 Cranch, 156; *Riney* v. *Riney*, 1 B. Mon. 69.

The language of our statute, "If the persons entitled to the action," &c. are under twenty-one, or other disability, necessarily implies that all must be under disability, or the saving will apply to none. How. & Hutch. Dig. 569, § 94.

H. L. Gray, under the construction of the deed, being a joint owner with the complainant, and having been under no disability, the statute commenced to run against all.

But even were it conceded that Mary H. Gray had a separate estate jointly with J. L. Gray, the same result would follow; for it appears from the proof, that, in 1836, when she removed to this State she was a widow, and under no disability.

Had the claim in question been that of the legal estate in a

court of law, it would be barred; and being an equity title, the remedy is equally barred. Angell on Limit. ch. 3, p. 24.

· The answer and proof show that Jeremiah Coleman is entitled to protection as a *bonâ fide* purchaser without notice; in such case, equity will not interpose, but leave the parties to their remedy at law. *Walwyn* v. *Lee,* 9 Ves. 24; *Frost* v. *Beekman,* 1 J. Ch. R. 300.

*J. M. Dyer,* for appellee.

The statute of limitations is relied on this case, by the appellant. The saving clause of the statute is in these words : " Provided that the rights of minors, *feme coverts,* &c. to institute such actions within three years after the removal of their respective disabilities, shall be in all cases saved and reserved." Hutch. Code, 830; Ib. 825, sec. 7. Could language be stronger, and does not the words " saved and reserved " in all cases, embrace and cover every case that can arise ? If the construction relied upon by the appellant be valid, the statute does not mean what it says.

A case has been referred to in 5 Yerger, intimating that if any one of the parties in interest was able to sue and the statute had run against him, then the others, though minors, were likewise barred. This decision must depend upon some statute of Tennessee, where the decision was made, and has no force here. I am sure no court would recognise a principle that would work such great injustice, unless compelled to do so by some positive enactment. The case of *Gray* v. *Hays,* in 7 Humph. 588, was also referred to, in which the deed of trust in the case at bar was before the court; and in that case the court intimated that the statute of limitations had barred the cause of action, but they do not decide the question. This cause is not to be decided by the statute of limitations of Tennessee, or the decision of that or any other State, but by the laws of our own State. I could also refer to the decisions of other States. In 7 Cranch, 156, several partners brought a joint suit at law, and some of them were barred by the statute of limitations. The court decreed that all the parties must be competent to sue, and unless they were, the

joint action was barred.  Here the case is different; there is but one plaintiff.  It is true, he was entitled to a joint action with his mother, but he is also entitled to a separate suit for his individual interest, in a court of equity.

If the appellee was entitled to one half the negro at any time, he is entitled still to that half as claimed in the bill. The decree of the vice-chancellor was certainly correct.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

Gray filed his bill in chancery to recover a certain slave under the folowing circumstances.  Joel Dyer, the grandfather of the appellee, in 1823, in Tennessee, conveyed to one Coleman a tract of land and certain slaves, in trust for his daughter Mary H. Gray, and her child, the appellee, and such other children as she might have, to their use and benefit.  She died in 1836, leaving but the one child, and her husband and the trustee are also dead.  The slave in dispute was sold by the husband in this State, about the year 1825, and the bill was filed in 1846, within three years after the appellee became of age.  The statute of limitations is relied on as a bar to the right of recovery, on the ground that the infant was barred by the bar which operated as to the trustee.

By the deed, Mrs. Gray and her child were made joint owners, and the only question is, Does the statute of limitations interpose to cut off the right of recovery?  It is contended, on the one hand, that as Gray instituted his suit within three years after he became of age, he is not barred.  And on the other hand, it is insisted that as the legal title was in the trustee, the right of action is barred, and that a court of chancery must apply the statute.

The question is not a new one.  Notwithstanding the saving in the statute in favor of infants, the opinion that the infant cannot maintain his action if the trustee be barred, has gained a strong foothold.  It has been so decided by courts of high authority, and the decisions have been cited and built on by authors of great accuracy.  *Wych* v. *East India Company*, 3 Peere Williams, 309; *Williams* v. *Otey*, 8 Humph. Tenn. Rep. 563; Hill on Trustees, 504; 2 Lomax on Exec.

401. The doctrine probably originated with the case of *Wych* v. *East India Company.* The company had contracted to pay the father of complainant a sum of money. After his death administration was granted until the infant should become of age. The administrator failed to sue, and the statute of limitations barred the claim. When the infant arrived at majority, he filed his bill to recover the money, and the lord chancellor held, that as the statute had run as to the administrator, who had a right to sue at law, the *cestui que trust* was also barred, notwithstanding his infancy. It should be observed that this case grew out of a mere money demand, a debt; and possibly in cases of that description it may be a correct doctrine. But it has been applied also in cases of personal property, to which the distributees have a title by law, subject to the rights of administration. There are, however, contrary decisions, resting, as we humbly conceive, on a better foundation. *Allen* v. *Sayer*, 2 Vernon, 368.

The saving in favor of infants, in the statute, is general. It covers all rights of infants, and operates against all persons. At least there is no exception in the statute itself, and to hold that time does create a bar against infants in certain cases, is to interpolate on the statute. The law should not only be a system founded in reason, but it should also be a consistent one. Infants being incapable of protecting themselves, must be protected by the laws of the land, and any system of law would be exceedingly defective, which did not afford them protection. The great object of the law is protection, and its strongest arm must be extended to the weak. Infants are the especial favorites of a court of chancery. It will not usually make a decree against them, without inserting a saving to them to investigate for themselves, when they become of age. The control of infants and their property, constituted one of the original subjects of its jurisdiction, and it would, on all proper occasions, restrain the guardian or trustee from disposing of, or changing the character of an infant's property, and would even regulate the expenditures for his maintenance. It is rather inconsistent with this general spirit of protection, for a court of chancery, which does not admit the obligatory force

of a statute of limitations, still to adopt a limitation by analogy, and exclude the infant from rights which he was wrongfully deprived of by a trustee. Our own statute law is no less vigilant in the protection of the rights of infants. Even under the authority of the probate court, they cannot be deprived of their property, unless by the most rigid observance of the law. Their guardians cannot encroach upon their estates for their maintenance, without the authority of the court. A decree against them, and sale of their property, may be set aside by express provision, after they become of age. Their guardians are held to a strict accountability to the probate court, for all their conduct in the management of the ward's estate. And many other instances might be mentioned, to show the spirit of the law, in regard to the rights of infants; but we pass on to the clause in the statute of limitations. This suit is brought to recover a slave, and the appropriate action at law is barred by the lapse of three years. By the 4th section of the act of 1822, it was six years, and it was provided by a separate section, that if any person entitled to any of the actions specified in the 4th section, should be within the age of twenty-one years, at the time the cause of action accrued, then the same time should be allowed him to bring his action after he should become of age. The act of 1827 changed the limitation to three years, but did not repeal or alter the saving. Then if a court of chancery is to adopt a limitation, it must be the one above mentioned; and if it may do so, the saving is of little use. Indeed, there is scarcely a case that can arise, in regard to personal property, that may not be excluded from its operation. An infant's property is always held by a trustee. If there should be no will or settlement, it goes first into the hands of the administrator, who may dispose of it illegally, or suffer it to be lost. In the next place, it goes into the hands of the guardian, who may also be negligent, or violate his trust. The infant cannot hold possession, or even sue for his property, without the aid of the guardian, nor can he make any valid contract in reference to it. If property be settled for his benefit, by will or deed, a trustee must intervene. The law, in some way or other, forces the property into the hands of trus-

tees, and one of the great objects of the saving was, to protect infants against the mismanagement and negligence of these trustees. It must have been designed to prevent an injury from the act of any one, by affording a full opportunity to him to protect himself when his judgment should become sufficiently ripened, to enable him to understand his rights. The meaning of the statute is, that the rights of persons laboring under disabilities, shall not suffer in consequence of such disabilities. In this instance the infant's right of action did not accrue until he became of age; before that he had no cause of action, as the property was in the trustee, and it involves a contradiction to say that his right of action was barred, before it accrued. The statute never begins to run until a right of action has accrued. A class of cases which holds that the *cestui que trust* is barred by the running of the statute against the trustee, is relied on, but the question of infancy did not arise in them. They go upon the ground that the *cestui que trust* should compel the trustee to act, and that may be true when there is no disability and saving. But this case is different; the infant's rights are expressly protected. The statute does not begin to run against him, until he is twenty-one years of age. His legal right is not barred before that time, and his equities cannot be. In the case of *Chandler* v. *Vilett*, 2 Saund. 121, the saving to infants in the statute was held even to extend to actions not enumerated in the saving itself, and which, by a strict construction, would have been barred. But the court said it came within the equity of the statute, because it was intended to protect the beneficial interests of the infant. And on the same point, the court in *Crosier* v. *Tomlinson*, said, "When the scope of an act appears to be in a general sense, the law looks to the meaning, and it is to be extended to particular cases, within the same reason." Note to 2 Saunders, 121. The case of *Allen* v. *Sayer*, above cited, arose out of a controversy about real estate, which had been devised in trust. The defendant had entered and levied a fine, which the court said was a bar as to the trustee, the legal estate being in him, yet it was held, that the infant was not bound by the laches of the trustee. It presents even a stronger case than the one before us.

Bacon et al. *v* Gray.

I am therefore of opinion the decree should be affirmed.

Justice SMITH concurred in the above.

Mr. Justice CLAYTON delivered the following dissenting opinion.

In 1823, Joel Dyer, the grandfather of the appellee, the complainant in the court below, made a conveyance in the State of Tennessee to one Blackman Coleman, of a tract of land and of certain slaves, "in trust for Mary H. Gray and her child, and such other children as she might have, for their use, benefit and behoof forever." The complainant is the child mentioned, and is the only one his mother bore. She died in 1836; her husband and the trustee are likewise dead. The slave in dispute was sold by her husband in this State, about the year 1825. This bill was filed in 1846, less than three years after the complainant became of age. The statute of limitations is opposed as a bar to recovery.

The deed made the mother and child joint owners of the property. See *Gray* v. *Hays*, 7 Humph. Ten. R. 590, a case which grew out of the same transaction. The dispute, however, in the present case, is in regard to the statute of limitations. It is insisted by the counsel of the appellee, that the suit was brought in three years after he came of age, and that he is not to be prejudiced by the failure of the trustee to sue at an earlier day.

The most of the authorities hold a different doctrine from that which is here contended for. In *Wych* v. *The East India Company*, 3 P. Wms. 309, it was laid down, " That the administrator during the infancy of the plaintiff had the right to sue; and though the *cestui que trust* was an infant, yet he must be bound by the trustee's not suing in time." This case is cited as authority in other decisions, and by various commentators. *Pentland* v. *Stokes*, 2 Ball & Beat. 75; 2 Lomax on Ex'rs. 401. Hill, in his treatise on Trustees, likewise refers to it, and adds, " This appears to be the true doctrine of the court, although the point might still be open to argument." Ib. 268. In *Williams* v. *Otey*, 8 Humph. 563, the point is expressly decided in ac-

cordance with this case. The court there says, "Whenever a trustee having the legal title, neglects to sue till he is barred by the statute of limitations, the *cestui que trust* is likewise barred, though an infant under twenty-one years of age." A similar decision was made in *Bennett* v. *Williamson*, 8 Ired. Law R. 124.

The case of *Allen* v. *Sayer*, 2 Vern. 368, appears at first view, to be opposed to these. There the court said, " Although the fine and non-claim was a good bar at law, the legal estate being in trustees who were of full age, and ought to have entered, yet the plaintiff ought not to suffer for their laches, being an infant." And so held that the infant was not barred.

In the case of *The Earl* v. *Countess of Nottingham*, 3 P. Wms. 309, note, the Lord Chancellor was of opinion, that a fine and five years non-claim should, in favor of a purchaser, bar a trust term, though the *cestui que trust* was an infant. These two cases may be reconciled by the fact, that in the former the fine was levied without consideration, and in the latter it was levied to a purchaser. This distinction is taken in reference to these two cases in Bingham on Infancy, 86. See also *Reynolds* v. *Jones*, 2 Sim. & Stu. 213.

Sanders, in his work on Uses and Trusts, p. 200, says, " A fine levied by a trustee cannot prejudice the equitable interest of his *cestui que trust*, unless it be levied to a purchaser without notice." Again, the same author, at p. 247, states the doctrine laid down in *Allen* v. *Sayer*, as the general rule, but adds, " The exception to the rule is in the case of a purchaser or creditor." Thus, it would seem to be established, that an infant *cestui que trust* may be barred by the laches of the trustee even in equity, as against a purchaser for value without notice.

At an early day Lord Hardwicke said, " The rule in this court, that the statute of limitations does not bar a trust estate, holds only as between *cestui que trust* and trustee, not between *cestui que trust* and trustee on one side, and strangers on the other, for that would be to make the statute of no force at all; for there is hardly any estate of consequence without such trust, and so the act would never take place. Therefore,

where a *cestui que trust* and his trustee are both out of possession for the time limited, the party in possession has a good bar against them both." *Lewellen* v. *Mackworth*, 2 Eq. Cas. Ab. 579; 1 Sand. Us. and Tr. 281; Hill on Tr. 267.

Other cases lay down the rule, " That if the trustee does not enter, and the *cestui que trust* does not compel him to enter, as to the person claiming paramount, the *cestui que trust* is barred." Or, to state the proposition more broadly, equity is bound to regulate its proceedings by analogy, or in obedience to the statute of limitations. *Hovenden* v. *Lord Annesley*, 2 Sch. & Lefr. 629; *Medlicott* v. *O'Donnell*, 1 Ball & Beat. 166. See also Angell on Lim. 515. It is true that, in these cases, it does not appear that the *cestui que trust* was under any disability. But the trustee is clothed with the legal title; the possession of the *cestui que trust* is his possession. So long as the trustee is in possession, there is no adverse holding until a disclaimer. The trust is not barred by the statute, when the question arises between the parties to it. Angell on Lim. 161; Hill, Trus. 266; Sug. Ven. 395. But in case of an alienation to a purchaser without notice, the statute will run. And when, in such case, a *cestui que trust* and his trustee are both out of possession for the time limited, the party in possession has a good bar against both. In such case, the remedy of the *cestui que trust* is against the trustee. 2 Tuck. Com. 436; Sug. Ven. 395.

Courts of equity are not within the words of the statute of limitations, but they adopt them by analogy, and follow the rules of law in regard to them. In the present case, the legal estate represented by the trustee is barred, and no suit at law could be sustained by him. It follows that the equitable estate is equally barred, and that the defendant, having had possession under circumstances which would prevent a recovery at law, is equally protected in equity.

In determining whether the *cestui que trust* is barred, it is always necessary to consider the extent to which his interest is represented by, or is confided to the trustee. The latter takes exactly that quantity of interest which the purposes of the trust require. Hill on Trustees, 238. No more nor less.

13*

An executor or administrator fully represents the interest of every one concerned, either as creditor, legatee or distributee, as to all debts due to the estate. Hence the decision in *Wych* v. *East India Co.*, 3 P. Wms. before cited, stands on correct principles. But it would not do to push the doctrine too far. But in regard to specific property not necessary to pay debts, he is a trustee of the legatee or distributee, but in a very limited sense. It may, therefore, deserve a very careful consideration, before it is decided that the legatee or distributee of such property can be barred by his negligence in prosecuting a suit to recover property which passed out of his possession after the death of the decedent. His acts or omissions should bind nothing beyond the interest which is vested in him.

But where a trustee is appointed for the protection of an estate of an infant, and the legal title is vested in the trustee by the conveyance, then to the whole extent that the legal estate passes to him, he is the representative of that right. If he betrays the trust, equity would, at the instance of the infant, extend its relief to him, and protect the equitable title; but if no one moves in it until the legal estate becomes barred, then the equitable estate would be likewise barred, in favor of a *bonâ fide* purchaser without notice.

The chancery court decided that the complainant was entitled to recover; this was not in accordance with the view here taken of the law. But that view is not sustained by the majority of the court. My opinion would be, that the case should be reversed and remanded. It does not appear by the record whether the trustee accepted the trust, and acted under it. If he did not, then the complainant's infancy brings him within the exception of the statute. *Rankin* v. *Bradford*, 1 Leigh, 163.

But by the majority the decree of the court below is affirmed.