JOHN H. PEARSON, use, &c. v. WILLIAM A. McMILLAN et al.,
Executors, &c.

1. STATUTE OF LIMITATIONS: ACTION ON BOND OF TRUSTEES WHERE CESTUI QUE
TRUST IS AN INFANT OR FEME COVERT.—An official bond, executed by a guar-
dian, or other trustee, and conditioned for the faithful performance of the trust
committed to the obligor, though in form it may be payable to the State, or
some public officer, yet in fact the obligee has no interest in it, but the obliga-
tion is for the benefit and security of the ward, or other *cestui que trust*, and
can only be put in suit for a breach of its condition, causing an injury to him;
and in an action on such a bond, the obligee is merely a nominal party, and
the *cestui que trust* is the real plaintiff, and no defence to the merits of the case
can prevail, unless it would be a bar, considering that the usee was the legal
plaintiff; and therefore the Statute of Limitations will not run in such a case
whilst the *cestui que trust* is under the disability of infancy or coverture.
2. SAME: SAME.—The rule which prevents the running of the Statute of Limita-
tions against suits on the official bonds of guardians or other trustees, during
the infancy or coverture of the *cestuis que trust*, applies as well· to actions at
law as to suits in equity, and to suits for the recovery of a mere money demand,
as well as to proceedings for the recovery of specific property.

ERROR to the Circuit Court of Monroe county.    Hon. Joel M.
Acker, judge.

This is an action of debt against the surety upon a guardian's
bond, which was executed in the State of South Carolina, on the
10th day of September, 1836, and is in the penalty of $24,000,
and payable to John L. Clark, commissioner in equity, and his suc-
cessors in office.

The condition of the bond is as follows:—

" That if the said David Ewart shall well and faithfully execute
the duties of guardian, and also yearly and every year account unto
the said commissioner in equity or his successors, or to such person
or persons as the said Court of Equity shall appoint to receive the
same, for all sums of money, books, papers, writings, and things
which he may have, receive, or be intrusted with on account of his
guardianship, and in other respects behave and demean himself
honestly and faithfully touching said guardianship, then this obli-
gation to be null," &c.    The declaration averred several breaches,

and the defendant pleaded a number of pleas, but it was finally agreed that the cause should be tried without formality of pleading.

It appears from the record that the said guardian made his yearly returns to the court until 1841. In May, 1841, he was cited to appear before the court and give additional security. He failed to give the security, and on the 1st June, of that year, he made his final return, showing a balance due the ward of          .

This return was examined and allowed as stated, and the court ordered the commissioner to inquire whether certain stock, pledged by the guardian to the commissioner as collateral security, was sufficient to secure the balance due. On the 18th June, 1841, these collaterals were reported insufficient, and the letters of the guardian were revoked, and he removed from office ; and one Samuel Donnelly appointed guardian in his stead, who immediately qualified as such. At the same time the collateral stocks were ordered to be sold, and were sold accordingly on the 1st Monday of December, 1841.

In 1846, Donnelly filed a bill in equity against the former guardian, and in which such proceedings were had; that on the 21st June, 1847, a decree was rendered against the guardian for the collective amount due this ward and another, her brother, for the sum of $5793 92. Execution issued on this decree against the guardian, and was returned "*nulla bona.*" It seems that there was a misdescription of the guardian's bonds in the bill; and in May, 1850, the decree was amended *nunc pro tunc.* There were two bonds and two wards, and on both which bonds the defendant had no surety ; and in the above-named suit the matters of each had been blended together. To correct this, in June, 1853, a supplemental bill was filed, and the ward having married in the meantime, she and her husband were made parties, and the old decree amended by a division of the money between the two wards; and a new decree was rendered in favor of each for one-half of the original claim and interest.

This suit was commenced on the 25th February, 1854 ; and the ward was then a married woman, and only eighteen years of age. The action is in the name of the successor in office of the obligee for the use of the ward.

The cause was, by consent, under the statute, submitted to the

Pearson v. McMillan et al.

judge upon the law and the facts, and he decreed in favor of the defendants, upon the ground that the suit was barred by the Statute of Limitations. The plaintiff moved for a new trial, which being refused, he excepted, and sued out this writ of error.

*W. F. Dodd*, for plaintiff in error.

I. It is conceded that the plain principle of law, that a surety stands strictly on his legal rights, and his obligation is to be strictly construed, applies with all its force to this and all other cases.

With whom then was this contract made, and for whose benefit? The chancellor of England was in one sense the guardian of all the minors in the realm, and under the judicial system of South Carolina, the Court of Equity had exclusive jurisdiction. The commissioner in equity is a mere officer of the court under that system, clothed with certain specific powers. The legal responsibility of the obligor is not to him but the infant, and he cannot maintain a suit upon it. Though in form to the officer, in effect the bond is payable to the infant, to assure him his estate and its proceeds committed to the guardian. *Commonwealth* v. *Preston*, 5 Monroe Ky. R. 588.

Guardians', administrators', sheriffs', and all bonds of that character, are payable to the office, and not to the officer. The minor is the real payee, and the contract is made for him by the proper authority. Whenever a bond is executed to a public officer, for the doing of an act required by law to be done by another officer, or to discharge a trust conferred, according to law, on some individual, by the appointment of a public officer, the bond is payable, in effect, to the office, and not the officer. *Treasurers* v. *Bates*, 2 Bayley S. C. R. 378.

The officer to whom the bond is payable, is a nominal party only. The suit cannot be brought by him, but only can be brought and maintained by the minor or party really interested, and judgment can only be had in favor of the usee. He is not the real plaintiff, and can never be so. The judgment is not for his benefit, nor can he have execution on it. *Judge of Probates* v. *Johnson*, 4 Howard, Miss. R. 680, 681.

The judge or officer, to whom an administrator's bond is payable, cannot sue and recover in his own name of the administrator or exe-

cutor, and his sureties, for a breach of the bond, but the party injured alone can sue, and the suit must be in the name of the officer for his use, and a suit and recovery, in the name of the judge or commissioner, would be no bar to suit by the party really interested. *Perkins* v. *Moon, Judge, &c.*, 16 Alabama, 13, 14.

The administrator's bond is nearly the same as the guardian's in South Carolina, and in the case of *Michell* v. *Connolly*, 1 Bailey R. 203, 204, 205, the court say, that the ordinary or officer, to whom the bond is payable, cannot maintain or bring a suit on the bond, not even for the use of the infant, unless he sues by his guardian, there being no statute authorizing a suit by a *prochein amy*. The obligation of his bond is, to pay over to the person entitled by law, and not to the officer to whom it is payable.

All the cases and authorities cited and relied upon are in reference to trusts created by private contract, by which the legal title to property, or a chose in action, is vested in a trustee for the use of another person, and have no sort of application.

In the case of *Frost* v. *Stanton*, 14 Connecticut, 445, the court decided, that the executor, in whom the legal title to the estate is vested, alone can sue to recover the same ; and, if lost by his negligence, the legatees or distributees may sue the executor on his bond, using the name of the officer to whom it is payable : which itself overturns the principle contended for by defendants, that the officer could and ought to sue for a breach of the bond.

So in the case of *The State of Maryland* v. *Dorsey*, 3 Gill & Johnson, 88, the court say, that in a bond payable to the State, conditioned to perform certain duties, the party injured is the real plaintiff, the cause of action belongs to him, and he alone can institute a suit on the bond.

We assert, with much confidence, that there is not a line or syllable of authority, in all the vast and accumulated mass of adjudicated cases and elementary works, which asserts a contrary doctrine.

We arrive then at the conclusion, that the bond sued on in this action is not a contract made with James L. Clarke, but really payable to the minor, who alone can sue upon it, and the officer has no legal or equitable interest in it.  The court and the law required the guardian to execute the bond payable to the officer, or to the

commissioner and his successors in office, and binds the obligors to pay to the guardian of the minor, or to the minor when he becomes of age, damages for the breach of the bond.

This removes the foundation stone, upon which the whole argument for defendant rests, and the entire fabric falls to the ground.

II. Having ascertained with whom the contract was made, and to whom it is really payable, let us examine what the defendants or obligors in the bond agreed to do, and what are the stipulations and undertakings " nominated in the bond." The bond is the penal sum of $24,000, and is conditioned as follows:—

1. That he will faithfully execute the duties of guardian.

2. That he, the guardian, will yearly and every year account unto the commissioner in equity, or to his successors in office, or to such person or persons as the Court of Equity shall appoint to receive the same, for all sum or sums of money, books, papers, writings, and things which he may have received, or be intrusted with, on account of his guardianship.

3. That he will otherwise conduct himself faithfully and honestly, touching his guardianship.

It will thus be seen that the obligors in the bond undertook that the guardian should not only account to the Court of Equity, but to pay over to the person whom the court should by its decree order him to pay. It is not, therefore, a promise to pay to James L. Clarke, for the use of the minors simply.

III. Having ascertained the parties to the contract in whom the cause of action vested, and the scope and extent of the obligation, let us see when there was a breach of the bond, and when the right of action accrued. It is admitted in argument that the covenants are broken. When did the breach occur?

Here Mr. Dowd argued at great length in support of the position, that the breaches of the bond complained of did not occur until the rendition of the decrees in chancery, which was within seven years before the commencement of this suit, and in support of this view he cited the following authorities: *Anderson* v. *Maddox,* 3 McCord, 237; *Ordinary* v. *Williams,* 1 Nott & McCord, 587; *Simpkins* v. *Powers,* 2 Ib. 213; *Jones* v. *Anderson,* 4 McCord, 113; *Wallace* v. *James,* Ib. 121; Harper's Ch. R. 264; 2 Const. R. 720; *Lyle* v. *Caldwell,* 3 McCord, 225; *Shelton* v. *Cureton,* Ib.;

412; 2 Baily R 406; *Boyd* v. *Caldwell*, 4 Richardson's Law R. 120; *Norton* v. *Wallace*, 2 Ib. 460; *Ordinary* v. *Wallace*, 1 Ib. 507; 2 Baily, 363; 4 Ala. R. 610; *Keel* v. *Preston*, 5 Monroe R. 585.

V. If we are mistaken in all the principles asserted, that the several causes of action on the bond accrued within seven years next before the commencement of this suit; and opposing counsel are right in the assertion that the cause of action accrued on the 13th of May, 1841, when the last report was made by the delinquent guardian, less than thirteen, and more than seven years before the commencement of the suit; then we assert that the plaintiffs are within the saving clause of the Statute of Limitations, and one of them having attained his majority, and the other having been lawfully married within seven years, next before the commencement of these suits, the plea of the statute presents no bar to the actions on the bonds. It is, however, immaterial whether Mrs. Smith has attained her majority or not, as the statute has never been so construed as to prevent a person laboring under disability from suing during the disability, notwithstanding they have a right of action for seven years after they become of age. Angell on Limitations, § 195 (new edit.).

It is strongly urged that the minors have but an equitable interest in these bonds, and that having but an equity, they cannot claim the benefit of their disabilities. Admitting, for the sake of argument, that they have but an equitable interest, the contrary doctrine has been expressly established in the case of *Payne* v. *Harris*, 3 Strobhart's Eq. R. 42, 43; *Davis* v. *Sullivan*, 2 English (Ark.) R. 449.

When the minor marries, and files a bill against the principal in the bond for a settlement of his account, and a decree is rendered against him after a litigation of twenty-four years, the lapse of time, while the ward was prosecuting his suit against the principal, will afford no defence to the surety in an action on the bond. The Statute of Limitations affords no bar in such a case. *Roberts* v. *Colvin*, 3 Grattan R. 358–363; *Dillion* v. *Philson*, 5 Strobhart's Eq. R. 213.

Although an administrator has executed the trust, settled with court, showing a balance in his hands, after the lapse of twenty-five years, a minor may compel him to pay and account, if the suit is

prosecuted within the statutory time after the removal of his disability, though all the other disputants are barred. *Pettus* v. *Clawson,* 4 Richardson's Eq. R. 102, 103.

Although the title of the trustee or administrator may be barred, this does not bar the equitable title of the minor. The fact that the trustee might have sued makes no difference. *Lacy* v. *Williams,* 8 Texas R. 187, 188, per Lipscomb, J.

Although a minor may have a guardian, who might sue, but neglects to do so, for a mere money demand, until the statutory time has expired, this cannot affect the right of the minor to sue on the attainment of his majority. He is expressly excepted in all cases from the operation of the statute. *Moon* v. *Wallis et al.* 18 Ala. R. 463.

The saving clause in favor of infants was intended to embrace all actions, whether equitable or otherwise, and the true construction is, that he may sue at any time during his minority, and within seven years after. *Chandler* v. *Villett,* 2 Saunders. R. 120–2, and authorities there cited; see also 2 Vernon's R. 368, not in the library.

The case of *Foster* v. *Maxey,* 6 Yerger, 224, 225, is the only case that can be found in all the wide, moving, unsteady, and tremulous ocean of adjudicated cases, which seems to favor the position assumed by opposing counsel. It is not a suit upon a guardian's bond, but a "guardian bond." It was against the administrator of the guardian. Mr. George Yerger, the counsel for the defendant in error, based his argument on the ground that the Tennessee Statute of Limitations of 1715, then in force, contained no saving clause in behalf of infants, minors, and *femes covert.* And the court say that the statute is a bar. It is unfounded, however, in principle, and unsupported by authority.

What! Can a man leave the earnings of a long and honorable life in the hands of a guardian for a child one year old; the guardian gives a bond and security,—steals every dollar belonging to the minor. If the probate judge puts the bond in suit, it is dismissed according to the cases before cited; and if the infant sues after his majority, he is barred by the Statute of Limitations, because the action accrued to him when he was one year old, and because he did not leave his cradle, in his swaddling clothes, and

employ counsel to prosecute his suit!! It is at war with every principle of justice, law, and humanity.

None of the cases cited by counsel will sustain his view of the case, as will be seen on examination.

The cases cited from 12 Metcalf, 1 New Hampshire, 6 Alabama, are in reference to private contracts made with the trustee. The cases cited from 8 Georgia, and others, decide that the legal title to property is vested in the executor, and, if he fail to sue, the claim is barred, and these are expressly overruled by the High Court of Mississippi in cases hereafter cited. The cases from 4 Richardson's Equity, 60, 70, and 9 Georgia, 332, recognize the doctrine that the rights of *femes coverts* and minors will be upheld until after the expiration of their respective disabilities.

But it is to the *lex fori* that the defendants appeal; and by the laws of Mississippi, as construed by her highest judicial tribunal, the validity of their plea must be determined. In the case of *Bacon* v. *Gray*, 23 Miss. Rep. 143, it was insisted that the trustee, in whom was vested the legal title, was barred, and therefore the infant *cestui que trust* could not support the action. The illustrious chief justice cites the very authorities, including the leading case of *Wych* v. *East India Company*, relied on by counsel, and overrules them all, and asserts "That the saving clause in favor of infants in the statute is general. It covers all the rights of infants and operates against all persons. There is no exception in the statute itself, and to hold that time does create a bar against infants in certain cases, is to interpolate upon the statute. Infants being unable to protect themselves, must be protected by the laws of the land. The strongest arm of the law must be extended to the weak. An infant's property is always held by a trustee. It first goes into the hands of an administrator or executor, who may dispose of it unlawfully or suffer it to be lost. In the next place, it goes into the hands of a guardian, who may also be negligent, or violate his trust. The infant cannot hold possession of his property, or sue for it, without a guardian, or make any valid contract in reference to it. The property of the infant is forced by the law into the hands of a trustee in some form, and the great object of the saving clause was to protect him from their negligence and mismanagement. The

meaning of the saving clause is that their rights shall not suffer in consequence of their disabilities. Ibid. 145, 146.

The last case cited refers to a claim of property. But in the case of *Adams* v. *Torry's Executors*, 26 Miss. R. 502, the legal title to the notes was in the guardian; he was bound by lapse of time. But the infants to whom the claims really belonged were allowed to sue at any time within six years.

2 George, 31 Miss. R. affirms the same doctrine, and if anything can be considered as settled, both on principle and authority, it is that the orphan infant who sleeps in his cradle, or plays upon the green, while a villanous guardian or trustee is stealing his fortune, or wasting it in wild speculation, shall be protected by the strong arm of the law. The death-bed of the honest and virtuous citizen will never be embittered with the reflection that his infant child may be robbed of his all, while too frail to protect himself.

*James T. Harrison* and *C. R. Crusoe*, for defendant in error.

I. John McMillan was a surety.

The contract of the surety is to be construed strictly, and cannot be extended by implication. The extent of the liability to be incurred must be expressed by the surety, or necessarily comprised in the terms used in the obligation or contract. The obligation is not to be extended to any other subject, to any other person, or to any other period of time, than is expressed or necessarily included in it. Burge on Suretyship, 40, 42 ; 9 Wheaton, 680 ; 5 Cond. U. S. Rep. 727 ; 15 Peters, 208, 209 ; 3 Binney, 520 ; 12 Wendell, 126 ; 2 Leigh, 647 ; 5 Alabama, 391 ; 29 Ib. 165.

II. The contract or obligation of the surety, in the present case, was in writing and under seal. The obligatory part of the instrument is to John L. Clark, commissioner, &c., and his successors. It is a guardian's bond, in which one Ewart is principal, and the said John McMillan, now deceased, is surety, executed in South Carolina, on the 10th day of September, A. D. 1836, in the penal sum of twenty-four thousand dollars.

The parties to such a contract are the persons in whom the legal interest is vested, and who must, therefore, be the parties to the action, which is instituted for the purpose of enforcing it. The obligation and legal responsibility are exclusively to the obligee, and

must be enforced by him in a court of law.  *Treat* v. *Stanton*, 14 Connect. R. 445, 451, 454, 455.

The action is debt for the penalty of the bond.  It is strictly a legal action, and brought to enforce a legal right.  The penalty is one entire thing, and can only be claimed by the obligee or his successor in office, by the very terms of the obligation.  Cases of *assumpsit*, where a legal liability raises an implied promise, do not apply.  This arises from specialty, and by force of the bond the legal right vests.  *Sanders* v. *Filley*, 12 Pick. R. 555.

In case of specialties the suit must be in the name of the parties to the engagement.  The bond raises no implied agreement in favor of the beneficiary, on which he can maintain an action.  No consideration moved from the beneficiary for any agreement of the surety to the bond to pay him.  *Millard* v. *Baldwin*, 3 Gray, 484 ; *Johnson* v. *Foster et al.* 12 Metc. R. 167 ; *Watson* v. *Cambridge*, 15 Mass. R. 290 (276) ; *Montague et al.* v. *Smith*, 13 Ib. 404 ; *Butterfield* v. *Hartshorn*, 7 New Hamp. R. 345 ; *Hinkley* v. *Fowler*, 15 Maine R. 285 ; 13 Shepley, 285, 287, 289 ; *How* v. *How*, 1 New Hamp. R. 49 ; Addison on Contracts, 242 ; 1 Chitty's Pl. 2, 3 ; *Sanford* v. *Sanford*, 2 Day, 559 ; *State* v. *Dorsey et al.* 3 Gill & Johnson, 92, 93 ; *Turner* v. *Eldridge*, 6 Alabama, 821 ; *Lee* v. *Gardner*, 26 Miss. 541.

The right of action at law has been wisely vested solely in the party having the strict legal title and interest, in exclusion of the mere equitable claim.  If a bond be given to A., conditioned to the payment of money to him for the use or benefit of B., or conditioned to pay money to B., the action must be brought in the name of A., and B. cannot sue for or release the demand.  In such case, the obligatory part of the instrument, and the acknowledgment of legal responsibility, are to A.  In such case, B. is a stranger to the deed, and violence would be done to the expressed intention of the parties, were he to be allowed to sustain an action in his own name.  The form of the instrument, and the reciprocity of the obligation between the parties to it, created by the express terms of the deed, negative and destroy any presumption that the contract was with him ; and in such case, the right of suit is constituted, and must be governed by the deed.  1 Chitty on Plead. 2, 3.

By legal rules, the usee is not a party to the action, and is only

treated as such under our statute in two instances, viz.: Where the nominal plaintiff dies; and 2d, Where the usee dies, the nominal plaintiff surviving. *Lee* v. *Gardner*, 26 Miss. 541; *Newell* v. *Fisher*, 24 Ib. 392; *Field* v. *Weir*, 28 Ib. 56; *Ackerman* v. *Cook*, 34 Ib. 262; *Chamberless et al.* v. *Vick*, 34 Ib. 109; *State* v. *Dorsey et al.* 3 Gill & John. 92, 93; *Turner* v. *Eldridge*, 6 Ala. 821; *Foster* v. *Maxey*, 6 Yerger, 224, 227; *Smith* v. *Mabry*, 9 Yerger, 314.

This suit was instituted on the 25th day of February, A. D. 1854, and the record shows that John McMillan, who was alone sued in the action, removed to this State early in the year A. D. 1845, nine years before the action was brought, and more than eighteen years after the date of the bond. The surety pleads and relies upon the Statute of Limitations. The reply is, that the suit is upon the bond in the name of the obligee, but the name of the beneficiary is inserted as usee in the commencement of the declaration; and that the usee is under the age of twenty-one years, or was so, and, therefore, it is contended, that the action is not barred in a court of law, and according to legal rules. There is an agreement, made a part of the record, that the pleadings on both sides are to be treated and considered as in due form, and as presenting the case properly, according to the facts, and the established rules and principles recognized in courts of law. Neither party is to take any advantage upon the mere pleadings. The plaintiff can only recover, if the facts warrant a recovery, if duly pleaded on both sides.

The surety stands upon the express terms of his contract, and says that the usee is a stranger to the deed, and that the obligation and legal responsibility are exclusively to the obligee and his successors; that it is a legal action, brought to enforce a legal right; that by force of the bond, and the bond alone, the legal right of action vests; that the suit must be in the name of the parties to the engagement; that the ward is a stranger to the deed in a court of law. 1 Chitty Pl. 3. That the obligation is a deed *inter partes.* 1 Ib. 3. The right of suit is constituted and is governed by the terms and stipulations of the deed. It was no part of the obligation that the surety had to remain bound a longer or shorter period, dependent upon the age of the beneficiary. His contract and agreement were not with the beneficiary, but with the obligee in the bond.

Pearson *v*. McMillan et al.

The undertaking of the surety cannot be extended by implication, but is to be strictly construed. It cannot be extended.to any other person, or to any other period of time than that expressed or necessarily included in it. He does not stand in a fiduciary capacity. No consideration moved from the beneficiary for any agreement of the surety to pay him. He made no contract with the infant, and the infant was incapable of making the contract. To maintain a suit in a court of law, the plaintiff must have a legal right of action —the legal title—and the beneficiary has no legal right of action now, and never had, and never can have. The suit is in the name of the party holding the legal title. He is the plaintiff, the legal owner and holder of the bond, and the usee, by legal rules, is not a party to the record. It cannot be pleaded at law, that the usee is a minor or a *feme covert.* *Turner* v. *Eldridge,* 6 Ala. 821. And the death of the usee is not the subject of a plea, nor is there, for the purposes of the suit, any necessity for suggesting his death, but the suit goes on as if he was still living. The judgment is rendered in the name of the nominal, the legal plaintiff; and it is nothing to the defendant who may be entitled to the equitable interest; and it makes no difference that the bond is given to an officer. In either case, the suit must be brought in the name of the obligee, and there is no necessity, for the purposes of the suit, to enter the use; nor, if entered, does it make any difference to the defendant how it may vary or change, as to the person asserting the same right. It does not affect his defence, nor can any change of the use become a fit subject of plea. *State* v. *Dorsey et al.* 3 Gill & Johns. 92, 93.

To the plea of the Statute of Limitations, can the usee interpose that he has an equity, and demand of the court to adopt the rules of pleading to suit his equitable rights? Can an equitable title, in a minor, be pleaded in a court of law so as to avoid the bar to the legal title? It is to the legal, and not the equitable title that the defendant pleads, and the fact that the usee is a minor cannot affect the result of the suit, or the rights of the security. Under the obligation no right of action ever did, or ever can, " accrue" to the ward against the surety. Under no possible or conceivable circumstances can the beneficiary ever maintain a suit at law upon the bond. The usee, the wife, is as much incapable of suing now as she ever was, and is now and always will be under " disability."

She never will be able to maintain a suit at law on the bond. Her disability cannot be "removed" by becoming of full age, so as to affect the result. The commissioner in equity has still to sue in his own name, precisely in the same manner, whether the usee is over or under age. No cause of action has "accrued" to the infant, nor does she, nor can she, come within the exceptions of the statute enabling an infant and *feme covert* to sue in their own name within the prescribed period after the removal of the disability, and after a cause of action has accrued to the party. It is on the bond that the security is liable, if at all; and when did a right of action accrue to the ward on the bond? When did she become "entitled to sue" under the Statute of Limitations? And when and how did she acquire a right to "institute" the suit? Hutch. Code, 825, 830, § 7; *Pendegrast et al.* v. *Foley,* 8 Georgia R. 1, 6.

In the case of *Prescott, Judge, &c.* v. *Read and others,* the Statute of Limitations was pleaded to a probate bond. The suit was for the use of a minor. But the age of the usee did not control the case. The judgment was for the penalty of the bond in the name of the judge holding the legal title. 8 Cushing's (Mass.) R. 365; and see *Brown* v. *Houdlette et al.* 10 Maine R. (1 Fairfield), 399; *Foster* v. *Maxey,* 6 Yerger, 224.

The bond is not property to which the ward had any title. No title to it passes to and can be transmitted to him. Of necessity, the security can only become liable upon a breach of the condition of the bond by the principal obligor. The bond is not assignable, nor can the right of action against the security, after a breach of the conditions, be assigned. When the obligee acquired his right of action, the security at the same time acquired an interest in the commencing protection of the Statute of Limitations and its legal consequences. *Brown* v. *Houdlette et al.* 10 Maine (1 Fairfield), 407; and the statute runs against the party holding the legal title. And in a court of law the Statute of Limitations can only run against the legal title. *Derbot* v. *McLean,* 4 McLean's Rep. 487. So chancery does not apply the Statute of Limitations to direct trusts, but no operative effect can be given to this principle in a court of law, because it can take no cognizance of the trust. *Bigelow's Executor* v. *Bigelow's Administrator,* 6 Ohio Rep. 49, 50;

*Young and wife* v. *Mackall*, 4 Maryland Rep. 362. The right of action is constituted by the deed, and must be governed by it. The reciprocity of the obligation between the parties to it, created by the express terms of the instrument, negative and destroy any presumption that the contract of the security was with any one except the person having the strict legal title and interest. Against such person the security claims his right under his agreement to plead the Statute of Limitations, *inter partes*, the right of action at law having been vested solely in such party.

The commissioner in equity is the mere obligee in a penal bond, upon which a right of action may or may not accrue, and is not a guardian or trustee, holding, for the time being, until his ward's majority, the legal title to his property or effects. This court has established the principle, that, where the personal property of an infant is illegally disposed of, or is permitted to pass into the hands of persons not entitled to it, by a guardian or other trustee, the Statute of Limitations does not begin to run against the infant until he is twenty-one years of age, and that he may recover the property in a case where an action by the guardian or other trustee would be barred. *Bacon et al.* v. *Gray*, 23 Miss. R. 140 ; *Fearn et al.* v. *Shirley and wife*, 31 Ib. 301, 304 ; *Adams* v. *Torry's Exors.* 26 Ib. 499. The cases of *Bacon et al.* v. *Gray*, and *Fearn et al.* v. *Shirley and wife*, were in chancery, and for the recovery of slave property, and upon title, and by the parties capable of maintaining the suit in their own names, and after the right of action had accrued to them. The case of *Adams* v. *Torry's Exors.* was a proceeding in the Probate Court against an insolvent estate. Four "claims" were filed with the commissioner of insolvency against the insolvent estate; two promissory notes, payable to one Walker, as guardian of Frances Hannan; a promissory note, payable to one Williams; and an open account, due the "estate of John Hannan." The open account, and the note payable to Williams, were held to be barred. "But," say the court, "the two notes payable to Samuel Walker, guardian of Frances Hannan, depend upon a different principle. It appears from the record, that Ellett was guardian of Frances Hannan, in place of Walker, from 1844 till 27th September, 1847, at which time he delivered over these claims to the ward. The ward became of age about that time.

The infant was allowed the same period of time, after coming of age, to institute his action, as if the action had accrued at the time of his coming of age." 26 Miss. 504.

Surely there can be no analogy between these cases and the one at bar. The ward cannot now, never could, and never can sue on the bond. After coming of age, no more right of action has accrued to the "infant" that was than before. She has no title now, and the suit is not in her name, but in the name of the party holding the legal title,—the party contracted with by the surety. The removal of the disability as to age, has not given the ability to sue. She has no property in or title to the right of action for a breach of the condition of the bond. It requires the legal title to be in the plaintiff to maintain an action in a court of law. This suit is at law, and not in equity, and must be governed by legal rules and principles.

And it is respectfully submitted that this court has already gone far enough, and entirely beyond "many authorities," as is stated in *Fearn et al.* v. *Shirley and wife,* 31 Miss. 304. The South Carolina authorities are included amongst the "many." *Long* v. *Casey,* 4 Rich. Eq. R. 60; 1 Bayley's Law R. 203, 205; and see. 29 Ala. 423; 9 Ib. 351, 363; 2 Dev. Eq. R. 243; 9 B. Monroe, 160; 9 Ib. 465; 13 Ib. 273; 10 Georgia, 358; 8 Ib. 1; 8 Ib. 236, 244; 9 Ib. 333; 20 Ohio, 250; 20 Pick. 2; 8 Cushing, 365; 8 Humph. 563; 1 Sneeds, 297.

And in *Bacon et al.* v. *Gray,* 23 Miss. 143, Judge Clayton dissented, and the chief justice admitted, that in a case of a " mere money demand, a debt," possibly it may be " the correct doctrine."

But how the foregoing decisions of our court can be thought to govern the action before us, we are at a loss to understand.

III. Ewart, the principal obligor in the bond, was removed from the guardianship in the year 1841. On the 28th day of May of that year, he was duly cited to appear before the court, and give additional security, and make settlement. He failed to give the security; but on the 1st day of June, 1841, he made his final return, showing the exact sum, in money, then due and owing by himself as such guardian. He had no other effects or estate in his hands. The report was received and passed on by the court, and was examined, and allowed, at that time, as the " balance due." On

the 18th day of June, 1841, his letters were revoked, and one Samuel Donnelly was then appointed guardian to succeed him. And the court thereupon ordered the commissioner in equity to institute an inquiry, to ascertain whether some "stock and certificates of scrip," in certain incorporated companies, pledged by the guardian to the commissioner in equity as collateral security, were sufficient to secure the "balance" then found to be due and owing, and unpaid by said Ewart. The collaterals were reported insufficient, and were sold by the commissioner on the first Monday in December, 1841. Donnelly immediately qualified as guardian.

By the laws of South Carolina, where the bond was executed, it was made the duty of the commissioner in equity, the obligee, to report defaulting guardians to the court on the first day of each term of the court of equity, whereupon the presiding judge was required to order proceedings to be taken before the commissioner for compelling such guardian to render a "full account" before the next sitting of the court, to discharge such guardian, and appoint another. 7 South Carolina Statutes, 327, 328, § 12. And in case of neglect, the statute made the commissioner individually liable for any loss, and then the presiding judge, after the commissioner, was sued to insolvency. 7 Ib. 327, 328. Hence, the combination in South Carolina to attempt to remedy the neglect of the officers by making the money, in Mississippi, out of the surety, and hence Mr. Arthur's long written argument, by way of evidence. He was commissioner for a long time.

When the penalty of a bond is forfeited, it becomes, at law, the debt, and a condition once broken is gone forever. 2 Black. Com. 341, 342 ; Hutch. Code. 874 ; Sedgwick on Damages, 411, 412 ; 2 South Carolina Const. R. 151 ; McDowell v. Caldwell, 2 McCord's Ch. R. 56 ; 12 Pick. 555. By the common law, and it prevailed in South Carolina, if the condition of a bond was broken, whether it was for the payment of money, or for the performance of covenants, the penalty was forfeited, and became the debt ; and although equity had always relieved against it, and although by statutes courts of law are authorized to do so, yet the legal character of the debt has not been changed. The penalty still remains a debt by specialty, and is entitled to rank as such in marshalling claims

against an estate. *McDowell* v. *Caldwell*, 2 McCord's Ch. R. 56; *Durkey* v. *Hammond*, 2 South Carolina Const. R. 151.

And it is not necessary, in order to sustain an action on a guardian's bond against the surety, that there should be a decree in the first place fixing the guardian's liability. *Burns* v. *Thomas*, 13 Smedes & Marsh. 459; *Judge, &c.* v. *Looney*, 2 Stew. & Porter, 75, 76; *Call* v. *Ruffin*, 1 Call, 290 (335); *Justices, &c.* v. *Willis*, 3 Yerger, 461, 462; *Davis* v. *Dickson*, 2 Stewart, 370; 5 Paige, 92. As soon as the penalty of the bond became forfeited, a right of action accrued against the surety. In 1841, Ewart's letters were revoked, and he had removed. The "balance due" was ascertained in money. The subsequent proceedings by bill and answer in the Court of Equity in South Carolina, between the subsequent guardian Donnelly and Ewart, to adjust the credits due for the collaterals placed by Ewart in the hands of the commissioner in equity, can in no wise vary the rights of the surety, or determine the time when the Statute of Limitations, in Mississippi, is to commence running upon the bond against him. His obligation is solely upon his bond. So in *Foster* v. *Maxey*, 6 Yerger, 224, 227, the guardian had been removed, and another had been appointed, and the new guardian filed a bill in chancery for an account, and obtained a decree. In a suit on the bond against one of the sureties, the Statute of Limitations was interposed, and the court say: "As, therefore, after the removal of Patterson, a right of action existed on behalf of the plaintiff upon the bond, all the breaches of its condition having then taken place which now exist, the amount then due the plaintiff from his guardian was a debt," &c. p. 227. The surety is only liable for a breach of the condition of the bond, and by a breach the penalty became forfeited. After the removal of Ewart in 1841, no new breach of the condition could occur. He ceased to be guardian, and it was held in the above case of *Foster* v. *Maxey*, that the Statute of Limitations was a complete bar, although the ward was an infant; yet the decree in chancery was obtained in 1831, and the suit on the bond was commenced in 1832. 6 Yerger, 227; *Prescott, Judge, &c.* v. *Read*, 8 Cushing, 365.

Statutes of limitation commence running from the time of the breach of the condition of the bond, and not from the time the breach is discovered, or made manifest by proof. 11 S. & M. 189;

3 Greenl. R. 405; 6 Yerger, 224; 15 Ala. 72; 1 Fairfield, 399; 8 Cushing, 365; 4 Peters, 172; 4 Rich. Law R. 40; 2 Strob. 344; Cheves Law R. 23.

But in this case the precise sum *in numero* was ascertained and made manifest by proof, and examined and passed on by the court, and collaterals sold to pay the same, in 1841. In the early part of the year 1845, John McMillan removed to this State (since the passage of the Act of 1844), and every breach of the condition of his obligation that now exists, existed then. The subsequent payments in South Carolina, and the application of the assets placed in the hands of the commissioner as collaterals, are matters of defence to the action. No settlement made by Ewart in or out of a court of chancery, after he was removed as guardian, can alter, change, enlarge, or restrain the time when the penalty of the bond became forfeited, or when a cause of action accrued against the surety. The principal can make no admissions after his removal as guardian to prevent the running of the statute against the security in Mississippi. The principal, the commissioner in equity, and the court seem to act in concert in South Carolina, and alter and change decrees at pleasure to suit the emergency of the case, and try and make the security liable. Ewart appears in proper person without a solicitor, and an answer is prepared and sworn to the day before the bill was filed. But when the statute commenced running it never stopped.

In 1846, five years after the cause of action had accrued on the bond, Samuel Donnelly, successor of Ewart, filed a bill in equity in Richland district, South Carolina, against said Ewart, in which he recites and states the fact of the revocation of Ewart's letters, in 1841, the "balance due" by him at that time, the disposition made of the collaterals, &c.; and prays for a judgment and decree against him for the money and execution thereon. Ewart was the sole defendant, and Donnelly joined the amount due two wards in the same bill. On the 21st June, 1847, a decree *pro confesso* was entered for the aggregate amount then due the two wards together, amounting to $5793 92. This decree was rendered in favor of Donnelly for that much money, and execution was issued in his name alone. It turned out that the two guardian bonds were not correctly described in the bill, and it was amended in 1850. On

the 17th June, 1853, what is in the record and proceedings styled a supplemental bill was filed, and by it, and upon the answer sworn to before any bill was ever filed, the court proceeded to act; and disregarding the former final judgment, execution, and return of *nulla bona*, split up the decree in favor of Donnelly and divided it into two equal parts; dropped Donnelly as a party; rendered two new judgments, one in favor of the female ward and her husband, the present usees, and the other in favor of the usee in case No. 9103. Donnelly was allowed to go thence, without delay, in mercy, &c. 2 Alabama R. 406; 6 Porter, 223.

· The avowed end and object was to reach the surety in Mississippi. The record so states. The proceeding was *res inter alios acta*, and not even evidence against him. *McBee* v. *Crocker et al.* 1 McMullin's Eq. R. 490; 29 Alabama, 167; 3 Iredell's Law Rep. 338; 26 Miss. 282; 3 Dev. & Bat. 91; 4 Litt. 208; 3 How. Miss. R. 236; 4 Dev. 268; 4 Ala. 607, 612; 6 Ib. 826; 13 Ib. 787; 7 Ib. 835; 1 Greenleaf. Ev. § 187. But if evidence against the surety in a suit on the bond to prove the amount due by the guardian, the chancery proceedings in South Carolina cannot affect the Statute of Limitations here as to the surety.

We rely upon the statute as a complete bar. The court below so decided, and if correctly, as we insist, that settles the whole case, and disposes, effectually, of all the alleged errors. As sureties, we claim the protection of the court.

HANDY, J., delivered the opinion of the court.

This action was brought by the plaintiff in error against the defendant's testator, as surety on a bond executed by one Ewart, as guardian of Juliet H. Smith, the usee, in the State of South Carolina, on the 10th September, 1836, under an appointment of the Court of Equity in that State, which has jurisdiction of such matters. The bond is conditioned, among other things, "to account to the commissioner in equity" (the obligee named in it), "or his successors, or to such person or persons as the said Court of Equity shall appoint to receive the same, for all such sums of money" which might be received by the guardian on account of his guardianship, &c.; and the action is brought in the name of Pearson, as commissioner in equity in the State of South . Carolina, and suc-

cessor in that office to the obligee named in the bond, for the use of the ward.

It appears by the record, that on the 1st June, 1841, Ewart, the guardian, made his return to the court, showing the amount due by him; and on the 18th day of the same month that he was removed from his office, and was ordered to pay over to Samuel Donnelly, who was appointed in his place, the moneys due by him; and that, on a bill filed by Donnelly against him, a decree was rendered on the 21st June, 1847, against him for the aggregate amount due the ward in this case, and another ward, who stood in the same condition; upon which execution issued, which was returned *nulla bona.* The sums due both wards having been united in making up the amount of this decree, at a subsequent term of the court the decree was amended so as to show the sum due each ward respectively. It further appears, that McMillan, the surety on the bond, removed to this State early in the year 1845, and became a resident here, and this suit was brought on the 25th February, 1854.

The defence is the Statute of Limitations, and it appears that the ward, for whose use the suit is brought, was about eighteen years of age and a *feme covert,* at the time of its commencement.

Upon these facts, the case was submitted to the court below for decision, both as to matters of fact and of law, and thereupon judgment was rendered for the defendants, upon the defence of the Statute of Limitations. And the case is submitted for decision here upon the question, whether the statute is a bar to the action.

It is insisted, in behalf of the defendants in error, that the action accrued in June, 1841, when the guardian returned his account, and was removed from the guardianship; or, at furthest, when the decree was rendered against him in June, 1847, for the payment of the sum of money due his wards; and that, from either of these periods to the time of the commencement of this suit, is a sufficient time to create the bar of the statute. On the contrary, it is insisted that the usee is the real plaintiff in the action, and that, being both an infant and a *feme covert* when it was commenced, her right of action is preserved by the saving of the statute in favor of the rights of such persons; and hence, that, although an action might have been brought in the name of the nominal plaintiff, as trustee, for her use, after either of the periods stated, yet that her right of action is not barred by the failure to do so.

It is true, that in matters of private contract, as bonds, promissory notes, and the like, between individuals, the obligee or payee is the proper plaintiff in an action at law, brought to recover upon such instruments; and for all technical purposes, he is regarded as the legal plaintiff. For he is not only the party with whom the contract was directly made, but the party for whose benefit it was entered into. But it is quite different in cases of bonds executed by trustees and public officers, acting in a fiduciary capacity, and giving bonds for the faithful performance of their duties. Such bonds are in form made payable to the State, or to some public officer, but are in fact for the benefit and security of the persons who may be interested in the performance of the duties committed to the obligor, as essentially as if made payable directly to such persons. And it is generally provided in the statutes authorizing such bonds, that they shall be put in suit at the instance of any party who may be injured by a breach of their conditions. Unlike the cases of private contracts, the obligee has no beneficial interest in them, and is to all intents and purposes a mere nominal party, whose name is used because that of the party who may be beneficially interested in the performance of the obligation is not known. Hence it is held, that a suit cannot be maintained in the sole name of such a nominal party, without stating for whose use it is brought, and showing wherein such party is injured by a breach of the conditions of the bond. *Judge, &c.* v. *Johnson*, 4 How. 680; *Mitchell* v. *Connolly*, 1 Bailey Rep. 203; *Perkins* v. *Moore*, 16 Ala. 10.

In this case, the condition of the bond is to pay the moneys received by the guardian to the commissioner, or to the person appointed by the court to receive them, and the court ordered them afterwards to be paid over to the second guardian for the use of the ward; so that the bond contained a positive obligation to pay the money to the benefit of the ward, and by the order of the court, the nominal obligee was not entitled to receive it.

It is, therefore, clear, that while the name of the obligee must appear as the formal plaintiff, the ward is the real party to the action, and that it cannot be maintained without the use of her name. And hence no defence to the merits of the suit can prevail, unless it be a bar to it considering the suit as brought by her as the real plaintiff.

Treating the usee as the plaintiff in the action, for all substantial legal purposes, her infancy or coverture, under the saving of the statute, prevented the running of the statute, and rendered the defence unavailable.

This view is much strengthened by the provisions of the Statute of 1850, abolishing the forms of pleadings at common law, and almost wholly dispensing with the technical rules of the common law in relation to the parties to such actions. Under these provisions, it is clear that the rights of the real parties interested as plaintiffs, should not be prejudiced by the technical rules of the common law in relation to parties to actions, relied on by the defendants in error. And this action was brought whilst that statute was in force.

But if the nominal plaintiff here be regarded as a trustee for the usee, and as holding the legal title in that character, the action for the use of the ward is not barred by the mere failure of the trustee to sue upon the bond after the cause of action accrued, and within the time stated in the Statute of Limitations, if the party entitled be under a disability enumerated in the statute, and the action be brought within the time limited, after the removal of the disability. This has been repeatedly held by the court. *Bacon* v. *Gray*, 23 Miss. 140; *Fearn* v. *Shirley and wife*, 31 Ib. 301; *Adams* v. *Torry's Exors.* 26 Ib. 499.

It is, however, urged that this rule has only been applied to suits in chancery, by the party who has been under a disability, and that it is not applicable to actions at law; that in the former it may be allowed by reason of the equitable claim of the party; but in the latter, that his right of action is governed by strict rules of law. But that is not the reason upon which the rule is founded. It rests upon the positive provisions of the statute, giving to the party, under any of the prescribed disabilities, time to institute an action after the removal of the disability. " This saving," it is said, " in the statute, is general. It covers all rights of infants, and operates against all persons. At least, there is no exception in the statute itself, and to hold that time does create a bar against infants, in certain cases, is to interpolate on the statute." *Bacon* v. *Gray*. And this reason is applicable as well to the rights of an infant, which have been jeoparded by the *laches* of the trustee, and

which from their nature must be asserted by action at law, as to such as it may be necessary to assert in a court of equity. The statute contains nothing which countenances a distinction between the two kinds of rights, as to the application of the saving to them.

It is also said, that the rule has not been extended to recovery of mere money demands, though it has been allowed for the recovery of specific personal property. But this is not justified by the general language of the statute; and the objection is fully answered by the reasoning in the case of *Bacon* v. *Gray*, above referred to. The reason of the saving in the statute is very justly and clearly stated in that case, to be the presumed incapacity of the party under disability to assert and protect his rights during its continuance; and there appears to be no reason why it should not apply to such rights as consist in money demands, as well as to claims to specific property. For he is alike incapable of asserting and protecting his rights in the one and in the other; and they are both committed in the same way to the charge of the trustee.

It follows from these views of the case, that the judgment is erroneous, and must be reversed; and the case having been submitted to the court below for decision upon the pleadings and evidence, and we proceeding to render the judgment which that court should have rendered, direct that judgment be rendered here for the plaintiffs in error, for the sum of money demanded in the action.