EBENEZER KILPATRICK *vs.* W. W. BUSH and Wife.

T. died in Tennessee, leaving a widow and one child, and four slaves. The widow administered, and sold one of the slaves to pay debts. The child intermarried with B. The widow afterwards intermarried with W., in 1826, and removed with him to Alabama, taking the negroes with her. W., in Alabama, conveyed his interest in the slaves to a trustee, to secure the payment of a debt due to B.; and B. having obtained possession of the slaves under the deed of trust, disposed of them. B. and wife filed their bill against K., alleging that he held possession of the slaves, having purchased them in 1828 or '29, and subsequently *removed* with them to Mississippi, and seeking to recover the slaves specifically. K. relied upon the statute of limitations, and objected to the competency of W., who was examined as a witness against him. Mrs. B. was born in July, 1822, and the bill was filed in November, 1845. *Held*, that her right to sue was not barred; but that W. was an incompetent witness for B. and wife.

An administrator, by removing the effects of his intestate beyond the limits of the state in which the administration was granted, forfeits his title to the property, and cannot sue in another state, in his own name, for the recovery of such property. Hence, in a suit between a distributee of the decedent and a purchaser under the administrator who has converted the property of the estate in a foreign state, such purchaser cannot avail himself of the statute of limitations as a defence, upon the ground that the administrator might have sued for the recovery of the property in the foreign state.

The right of an administrator to sue for the personalty of his intestate in a foreign jurisdiction, is confined to cases in which he had reduced the property into his own possession in the country of his domicil, so that he acquired the legal title thereto according to the laws of that country, and the property is afterwards found in another country, or carried away and converted there, against his will.

An administrator, who has been guilty of an actual *devastavit*, and is liable to a suit therefor upon his bond, is incompetent as a witness for a distributee who sues for the recovery of the property of the decedent from a stranger, where the property in litigation has been converted by the administrator.

ON appeal from the northern district vice-chancery court at Holly Springs; Hon. Henry Dickinson, vice-chancellor.

The facts of the case as shown by the record are, that William Trigg, died in 1823, in the state of Tennessee, leaving a widow, Dorothy, and oratrix (Amanda M.) an only child. Dorothy administered, and Trigg, at his death, had four negroes and other property ; that Dorothy, administratrix, sold one of the negroes to pay his (Trigg's) debts, leaving three other negroes unsold. By the laws of Tennessee, oratrix Amanda M. was entitled to two thirds of said property, and said Dorothy to one third. Afterwards Dorothy married one R. W. Woodruff, who, without having set apart to Amanda M. her interest in said slaves, on the 10th of August, 1827, conveyed by deed of trust the undivided interest in said slaves, being the one third, of said Dorothy's, to Brandon, as trustee for one Brown, by virtue of which conveyance, Brown fraudulently got possession of all the negroes and disposed of them. The negroes came into the possession of Kilpatrick, in 1828, who has had possession ever since, claiming them as his own. The increase of said slaves are fifteen or twenty, and valued at several thousand dollars. The bill prays for discovery, account, and for possession of two thirds of said negroes and two thirds of hire. The court below sustained the bill upon the facts proven, from which decree of the court the plaintiff in error (Kilpatrick) appealed.

*Watson & Craft*, for appellant.

It is contended, Woodruff was an incompetent witness, and his testimony was improperly received, because his wife was directly interested, and her interest alone will exclude his testimony. 1 Greenl. Ev. § 334, 335, 341.

The complainants in the court below are precluded by the, settled rules of equity from recovery in this case, because they come into court on an equitable title only. The legal title to the personal estate of William Trigg vested in the personal representative. Tenn. Stat. 71, 72; *Therman et al.* v. *Shelton et al.*, 10 Yerg. 383; Cooke, R, 200; 3 Hayw. 94; Story's Confl. L. § 516.

It must be apparent, that the complainants in the court below have nothing but an equitable title ; and the defendant

Kilpatrick *v.* Bush et au.

having been long in possession of the property, and having, at least, an equal equity with complainants, they should not recover.    It is a maxim in equity, " That when the equity is equal, the party in possession shall prevail."    Ld. Redesdale's Prac. 215; Mitf. Eq. Pl. 215; Story's Eq. § 604.

It is a settled law, " That a person in possession of an intestate's property, can hold it against any person but a creditor, or an administrator.    A distributee stands in neither of these relations, and therefore cannot sue for the personal property of the intestate, nor demand a distribution of it from any one, save the administrator."    10 Yerg. 383 – 385.

*D. C. Glenn*, for appellee.

The interest of Woodruff, if he have any, is too remote to affect his competency.    The objection might go to his credibility, but cannot affect his competency.    1 Greenl. Evid. § 411, 412; *Carter* v. *Pearce*, 1 T. R. 163, 302; 1 Hen. & Munf. 168; 2 Pick. 308.    There must be a legal and fixed interest to disqualify a witness, a certain benefit.    10 Johns. 21; 16 Ib. 89.    A remote or contingent interest affects the credit only.    5 Johns. 256; 2 Phil. Ev. C. & H. notes, 93, 452; 3 Gill & Johns. 358.

There is no equality of equity in this case.    As to the position in Story's Conflict of Laws, that an administrator having possession in the jurisdiction where he qualifies, may sue any where, I reply, that the statute bars his remedy, but not ours.

This court will render such a decree as the court below should have rendered.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

Bush and wife filed this bill to recover certain slaves, under the following circumstances.    William J. Trigg died in Tennessee, leaving a widow and one child, then an infant about one year old, named Amanda, who is now one of the complainants, having intermarried with Bush, the other complainant.    Trigg left four slaves, and the widow administered, and sold one of the slaves to pay the debts, and the remaining,

with their increase, constitute the subject of litigation.   ·By the laws of Tennessee, the widow was entitled to one third of the negroes which remained after the payment of the debts, and the child to two thirds, but no distribution. was ever made between them.   In 1826, the widow intermarried with Woodruff, and removed with him to Alabama, taking the negroes to that state.   There Woodruff made a deed of trust, by which he conveyed his interest in the negroes to a trustee, to secure a debt due to Brown.   By virtue of this deed of trust, Brown, as it is alleged, fraudulently got possession of all the negroes, and disposed of .them, and defendant is charged with now having possession, having purchased them, as it seems, in 1828 or 1829, and subsequently removed with them to this state, and this bill was filed in 1845.   The vice-chancellor decreed for the complainant, and Kilpatrick appealed.

Two grounds are principally relied on for reversing the decree; first, the statute of limitations; and second, the incompetency of Woodruff, who was examined as a witness for complainants, and whose deposition was the most material evidence in the case.

Mrs. Bush was born in July, 1822, and, of course, arrived at majority in July, 1843, and, as the bill was filed in November, 1845, her right is not barred, unless it be barred in consequence of the running of the statute against the administrator of Trigg's estate.

It is contended that the legal title was in Woodruff, in virtue of his wife's administration, and that he had a right to sue for the property in any state in which it might be found, and therefore that complainant's right is barred.   In support of this position, the Conflict of Laws is cited.   Judge Story says : " If a foreign administrator has, in virtue of his administration, reduced the personal property of the deceased, there situated, into his own possession, so that he has acquired the legal title thereto, according to the laws of that country; if that property should be afterwards found in another country, or be carried away and converted, there, against his will, he may maintain a suit for it there in his own name, and right personally, without taking out new letters of administration; for he is to

all intents and purposes the owner thereof, although he is so in the character of trustee for other persons." Conflict of Laws, 432. Now if a state of case existed which could admit of a full application of the principle stated, it might be difficult to avoid the conclusion, if the authority of *Wych* v. *East India Company*, 3 P. Williams, 309, is to be admitted, and it seems to have been generally sanctioned. Administration had been granted in that case on the estate of the father during the infancy of his son, who was heir and distributee. The administrator failed to sue on a contract made with the company by the father; but the son brought his bill within six years after coming of age; and it was decided that as the administrator, during the infancy of the plaintiff had a right to sue, and though the *cestui que trust* was an infant, he must be bound by the failure of the trustee to sue, and accordingly the benefit of the statute was allowed. This case has been cited by authors of high standing, and built on by courts of great repute, without any comment of disapprobation; but, it should be remarked, it was a case of a mere money demand, growing out of a contract to pay a specified sum, and was doubtless a correct decision on the particular case. But admitting it to be authority for the present, will the facts of this case warrant an application of the principles settled? In the first place, is it true that the administrator of Trigg could have sued for this property? If they had remained in Tennessee, and the property had been taken out of that state, and converted against their will, in the language of Judge Story, then they might have recovered in their own names, on the strength of the title acquired in Tennessee. But it seems this property was taken from Tennessee by the administrators themselves, and in this respect it differs from the case put by Judge Story, and his doctrine will not apply, unless the legal title acquired by them in Tennessee continued after they removed the property to Alabama. That the character of their title was not changed by the removal, is a proposition not so easily maintained. An administrator is a constructive trustee, holding for the benefit of distributees and others. His character and his title depend on the local law. An administration is strictly terri-

torial. An administrator in one state or country has no authority as such in another; and as his title is derived from the grant of administration in the country of the domicil of the deceased, that title cannot *de jure* extend beyond the territory of the government which grants it, nor beyond the movable property therein. Conflict of Laws, 421. It is a local or limited title, conferred only for the purpose of discharging a trust created by the local law, in reference to property within its jurisdiction. It can no more have an extra-territorial operation than the law which created it, as it creates a relation with, and an accountability to, the local jurisdiction. If this be so, the legal trust created by the laws of Tennessee must have ceased when the administrators removed the property to Alabama. As administrators, they could not have maintained a suit there in respect to this property, without a new administration. Nor was the property liable in their hands as administrators for the debts of Trigg. Judge Story says: " If a foreign administrator brings property here, which he has received under the administration abroad, or if he is personally present, he is not either personally, or in his representative capacity, liable to a suit here; nor is such property liable here to creditors." Conflict of Laws, 432. This then was the condition of Woodruff and wife in Alabama, and it would seem to result, necessarily, that the legal trust had ceased, and with it the legal title which grew out of it, and depended on it. Then the question arises, Could Woodruff and wife have sued for the property which was taken out of their possession in Alabama, under the principle relied on by counsel, that an action may be maintained by a foreign administrator in his own name, on the strength of the title and possession acquired under the foreign administration? They could not, unless the legal possession, acquired under the administration, is also a legal possession beyond the jurisdiction which granted it. It would seem that an administrator must forfeit his legal right by removing the property. This must be so, unless it be assumed that he may remove it. Then how is he to maintain his action, if his title is to be traced through an act of forfeiture?

Now it is quite probable that, as between the administrators and their *cestui que trust*, a court of chancery would declare a trust even in Alabama, but it would do so on the ground of a conversion of trust property by a tortious act, and it must be needless to say that the statute would not run in such case. But certainly the difficulties are very formidable when a stranger must maintain a legal title in the administrators. If the statute is a bar, when did it commence running? Of course, when Brown got possession of the negroes in Alabama; and on what ground did it then begin to run as to the plaintiffs? 'On the ground that Woodruff and wife were trustees, and held the legal title; it can rest upon no other. But that cannot be unless the administration had an extra-territorial operation, which we have seen is not the case. It should be observed that Woodruff had conveyed his wife's interest in the property, and as it was undivided, was not his right of action thereby defeated? Suppose he had sold the entire property, he could have maintained no action, and yet would it be contended that complainants were barred by the act of limitations? If they were, infant distributees are placed at the mercy of executors and administrators. Our conclusion is, that, in no possible view of this case, can the statute of limitations be made available to defeat complainants' right.

On the second point in this case, it is contended that the interest of Woodruff was too remote to disqualify him. An interest which will disqualify a witness must be a legal, certain and immediate interest, and not uncertain or contingent. 2 Stark. 744, 745. Or if the judgment will be evidence for or against him, he is incompetent. As a general rule, no reason is perceived why an administrator should not be competent to establish the right of the distributee in a controversy with a stranger. Many cases of the kind might exist in which the administrator could have no interest; and if he is incompetent, it must be the result of his mismanagement of the estate, and his personal liability consequent thereon. In the case cited from 3 Gill & Johnson, the former guardian who had had possession of the property, was held competent to establish the right of his ward, although it was urged that he might be

liable for a *devastavit*. It is not the mere relation of guardian and ward, or administrator and distributee, and the possibility that a *devastavit* has been committed, which disqualifies, but when an actual *devastavit* is shown, the case is altered. The current of authorities is strongly against the exclusion of a witness in consequence of a remote or possible interest. 2 C. & H. notes to Phillips, notes 88, 89, 93. And where it is doubtful whether the witness is competent or not, the better opinion is that he should be admitted, and let the objection go to his credibility. The question is here, on the admissibility of a deposition, and if the witness was incompetent, the question must be decided on the face of the deposition. Our remarks on the first question discussed in this case, fully show the attitude of the witness, Woodruff, towards the complainants, and his interest must be too apparent to admit of doubt. He is liable to be sued for a *devastavit* on the bond, and the right of recovery would extend to the full value of the property, as it was not taken from it until after he had converted it. But at all events he is liable, for having converted trust-property with a full knowledge of the trust, to the full value of the property. If he can succeed in restoring the property to the *cestui que trust*, to that extent at least is he discharged.

Judgment reversed, and cause remanded.