BETTIE BROCKETT ET AL. v. E. RICHARDSON.

1. FEDERAL COURTS. *State statute. Jurisdiction.*
   Where a right is given by a statute of this State it can be enforced by the Federal courts through its own machinery, if practicable, regardless of the mere method prescribed by the statute of this State.

2. SAME. *Estate of decedents. Jurisdiction.*
   The Federal courts at the suit of foreign creditors have the power to subject to the payment of their demands the property, both real and personal, of a deceased debtor.

3. SAME. *State courts. Jurisdiction.*
   Inferior Federal courts have no right to review the judgments or decrees of a State court.

4. GUARDIAN. *Purchase of property of ward.*
   As against his ward a guardian has no right to purchase the trust-property, whether the purchase be in good or bad faith.

5. SAME. *Joint purchase with third person of ward's property.*
   Where a guardian jointly with another person, having full knowledge of the relationship, purchases the ward's property, neither acquires title as against the ward, regardless of the *bona fides* of the purchase.

APPEAL from the Chancery Court of Washington County.
HON. W. G. PHELPS, Chancellor.

The facts are stated in the opinion.

*A. B. Pittman* and *Frank Johnston,* for the appellants.

1. Under the terms of the second post-nuptial settlement, the fund therein secured in default of appointment or desire by Mrs. Betsy Johnson was to be held by the trustee for "her heirs," and by apt technical language all the marital rights of the husband were excluded. The words of exclusion are strong enough to have excluded curtesy if the subject of the second trust had been land. *Denton* v. *Denton,* 17 Md. 403 ; *Holmes* v. *Liptrol,* 8 Ga. 279 ; *Wright* v. *Pratt,* 17 Mo. 43; *Mason* v. *Deese,* 30 Ga. 309 ; *Bragg* v. *French,* 5 Sneed 244. But the question in respect to the direction that this *personal fund* settled upon the wife was to take is easy of solution. It was to belong to the wife, with power of alienation and devise, and in default of appointment or devise the trustee was to hold it in trust for her heirs and transfer it to them. This excluded the husband, who would have taken a *chose in action* by the marital right. *Griffith* v. *Griffith,* 5 B. Mon. 116–117 ; *Suggs* v. *Tyson,* 2 Hawks (N. C.) 480 ; *Smith* v. *Henry,* 35 Miss. 369 ; 1 Vesey 46 ; 2 Kent Com. 136. But if it had been an ordinary *chose in action,* not reduced to possession during the coverture, and not governed by the terms of a settlement, it would not have gone to the surviving husband, but to the distributees of the wife under the statutes in force in 1863, at the time of her death. *Leaky* v. *Maupin,* 10 Mo. 369 ; *Holmes* v. *Holmes,* 28 Vt. 765. The statute of descents directs the course of all a wife's separate property, the term "property" embracing *choses in action.* 2 Bishop on Married Women, § 75. The Connecticut decisions cited by the counsel for appellee are based on special statutory provisions and announce a rule in conflict with the general doctrine. 1 Bishop on Married Women, p. 95, note 1. But there can be no doubt about the question under trust settlement.

2. As to the liability of defendant, E. Richardson, under principles of equity jurisprudence. Relief against *fraud, accident,* or *mistake* is, perhaps, the most general and familiar ground of equitable jurisdiction. The fundamental principle is one of pure and simple justice. The "conscience" of the Chancellor determines

the *right* of the matter in accordance with a natural sense of justice, unshackled, save in a slight degree by certain rules based on considerations of public policy and expediency touching the practical administration of justice. Under these principles the utmost fidelity is exacted of all trustees and other agents howsoever named or classified who act for others, " *qui negotia aliena gerunt.*" *Lowery* v. *The Com. and Farmers' Bank of Maryland*, 3 Am. L. J. 111 ; *Shaw* v. *Spencer*, 100 Mass. 389, and other cases cited in L. Cas. in Eq., Vol. I, part 1, p. 119 ; *Fox* v. *MacKreth*, L. Cas. in Eq., Vol. I, part 1, p. 237 ; *Davoue* v. *Fanning*, 2 John. Ch. 255. It seems marvelous that defendant, scarcely denying his liability under the first purchase, should rest his case on the second. Not only were these titles subordinated to Mrs. Brockett's interest as heir of her grandmother, but she is, as co-heir of the grandfather, entitled to participate to the extent of one-third in all those purchases. L. Cas. in Eq., Vol. I, part 1, p. 65 *et seq.; Green* v. *Winter*, 1 John. Ch. 27, 36 ; *Van Horne* v. *Fonda*, 5 Ib. 388, 409 ; *Hawley* v. *Mancius*, 7 Ib. 175, 188 ; *Giddings* v. *Eastman*, 5 Paige 561 ; *Steele* v. *Babcock*, 1 Hill's N. Y. 530 ; *Heager's Ex.*, 15 S. & R. 65 ; *Boyd* v. *Hawkins*, 2 Ired. Eq. 306 ; *Prevost* v. *Gratz*, 1 Pet. C. C. 373 ; *Calvert* v. *Holland*, 9 B. Mon. 463. The foregoing cases support her right to the benefit of the claims bought up at a discount. She is entitled, therefore, to the extent of her interest to her share of its fruits, on her payment of her proportion, as to which she is entitled to an account, that she may then elect. Not only encumbrances, but adverse and paramount titles must fall into the trust. *McClauchan Heirs* v. *Hendersons*, 2 Marshall 388 ; *Morrison's Ex.* v. *Caldwell*, 5 Mon. 426 ; *Kellogg* v. *Wood*, 4 Paige 578 ; *King* v. *Cushman*, 41 Ill. 31 ; *Brantley* v. *Ker*, 5 Jones Eq. 352 ; *Penman* v. *Slocum*, 41 N. Y. 53 ; *Hecker* v. *Cosgrave*, 4 Russ. 562 ; *McElhenny* v. *Hubert Oil Co.*, 11 P. F. Smith 188. The same equity subsists between tenants in common claiming under the same ancestor, or through the same will or deed. *Lloyd* v. *Lynch*, 4 Casey 419 ; *Gibson* v. *Winslow*, 10 Wright 380 ; *Van Horne* v. *Fonda*, 5 John. Ch. 388 ; *Flagg* v. *Mann*, 2 Sumner 486, 522 ; *Weaver* v. *Wible*, 1 Casey 270 ;

*Smiley* v. *Dixon*, 1 P. & W. 441 ; *Leisenring* v. *Black*, 5 Watts 303.

3. The bill of review in the United States Circuit Court is not *res adjudicata* in respect to the present proceedings. That was based exclusively upon a recital of the original proceedings and sought in effect to rescind the judgment of the court in making the original decree.  He who pleads *res adjudicata* must show affirmatively and distinctly that the precise matter in dispute has been already determined in a prior litigation.  Nothing short of this will do.  Moreover, to assert that such was the fact here would be to attribute gross ignorance to the court ; for the right of appellant under the post-nuptial settlements is too clear for argument, and the objections to her claim are too flimsy for serious criticism.

4. So far as the land now in question is concerned, the decree of the Federal court directing its sale must stand or fall as may be decided this single question, *viz. :* can the lands of decedent be sold at the instance of simple contract creditors by a decree of a circuit court of the United States in equity ?   We deny the existence of any such jurisdiction.   *Boom Co.* v. *Patterson,* 98 U. S. 406 ; Waples on Proceedings *in Rem* 702 ; *Grignon* v. *Astor,* 2 How. (U. S.) 319 ; *Wyman* v. *Campbell,* 6 Port. 219 ; *Couch & Robinson* v. *Campbell,* Ib. 262 ; *Perkins' Exr.* v. *Winters' Admr.,* 7 Ala. 852 ; *Florentine* v. *Bartan,* 2 Wall. 216 ; *Beauregard* v. *New Orleans,* 18 How. (U. S.) 503 ; *Pennoyer* v. *Neff,* 95 U. S. 715 ; *Saletur* v. *Saletur's Heirs,* 41 Ala. 26 ; *Green* v. *Van Buskirk,* 5 Wall. 307 ; *Christmas* v. *Russell,* 5 Wall. 306 ; *Melhap & Kingnian* v. *Doane,* 31 Iowa 397 ; *Moore* v. *Shultz,* 13 Pa. State 102 ; Story on Conflict of Laws, § 592.  The nature of the proceeding being *in rem* the jurisdiction is exclusive in the *forum rei sitæ.*   It is the *lex fori* which authorizes its sale and prescribes the conditions and mode, and not an incident to or fruit of a decree or judgment *inter partes.*

*A. B. Pittman* and *Frank Johnston* also argued the case orally. *Nugent & McWillie,* for the appellee.

The record in the original proceeding shows that the very rights here now sought to be litigated were brought before the court, that

all the parties in interest were properly represented, that the questions arising upon the face of the proceedings were fully passed upon by the court, that they were adjudicated, that the property was sold under the final decree therein entered, and that the appellee purchased the estate under that decree, paid a large sum for it, and that the sale to him was confirmed. All these proceedings have been sustained by the court and the appellant's bill of review dismissed on demurrer. It would look, therefore, like a play with justice to allow a new suit to harass the purchaser, even though the appellant was a minor at the time. If she desire further to litigate she should be forced to an appeal from the decision of the Circuit Court of the United States to the Supreme Court, in order that the question may be determined by that august tribunal.

The appellee, Richardson, purchased the lands under the decree of the United States court, and subsequently under the final decree in the Carson case. The purchase-money arising under the decree in the last-named case was paid by Richardson, and the share coming to appellant was paid to her *guardian*, or acting guardian, F. W. Lonsdale. Indeed, Lonsdale, we think, became afterward guardian for the appellant. It is true that the decree in the case of *Erwin* v. *Carson* was afterward reversed by this court, 54 Miss. 282, but that can hardly affect Richardson. He purchased and paid the money and should be protected, as there is no proof of fraud or collusion in the case. Until reversed the decree was valid and binding and a title under it should be sustained. Indeed, if the old proceeding be ignored the demand of the appellee is barred by the statute of limitations. There was nothing to arrest the running of the statute. Carson was the administrator and he had the right to collect the fund.

That the present effort is to renew the litigation concluded in the United States Circuit Court must be quite manifest. We specially call the court's attention to the *bill of review* in that court and this bill here. One ground of *demurrer* was that there was *no error in law* shown to exist in the proceedings sought to be reviewed, and the demurrer was sustained and the bill dismissed. If the United States court had the *jurisdiction* and in the exercise

of that jurisdiction fully disposed of all matters propounded, it is inconceivable that the controversy can now be *renewed.* We feel quite sure that the questions have gone into the domain of adjudication and cannot now be reopened; and that seems to be the view of *opposing counsel,* who undertake to avoid the point by a suggestion that a monstrous fraud was perpetrated upon the rights of the appellant, and that the present bill is to reach and nullify it. It is a rigorous rule in all courts that parties shall not be allowed to split up controversies. *Nemo debet bis vexari, si constet curiæ quod sit pro una et eadem causa.*

It is manifest that the Circuit Court of the United States, on the record presented, held that there *was no error in its proceedings* for the sale of said lands apparent on the face of the same. If there was any *error* at all, it could only be reached and corrected by *an appeal* from the final decree to the Supreme Court of the United States. Certainly it could not be collaterally assailed and reviewed by the State court. The appellant and all others the heirs of Johnson were *enjoined* from prosecuting the Carson suit, and that injunction has never been displaced. So that, whether the bill of review present the estoppel or not, the suit in the Federal court and the sale of the property under the final decree in that case effectually closes the door to any proceeding other than an appeal or writ of error to the Supreme Court of the United States. There was a full adjudication on *all the points here now raised* and a sale of the very property in controversy, and whether right or wrong the matter should not again be litigated. The suggestion of a conspiracy to rob the appellant and acquire her ancestor's property is not founded upon any evidence in the record. Edward P. Johnson's estate was hopelessly insolvent; it owed some three hundred thousand dollars and was worth about fifty thousand dollars; there was nothing in it for the widow and heirs. If there was anything for them at all it arose under the Betsy Johnson mortgage, which was wholly disregarded by the United States court. The final decree establishes this fact. There was no scheme to rob any one interested in the litigation. We think it clear that this subject should be permitted to rest after so many years of litigation. There is

nothing to impress the character of trustee upon Richardson. We refer the court to Richardson's claim as presenting an insuperable barrier to any recovery in this cause. There can be no doubt that the *trust claim* relied upon was a simple *chose in action* that passed to the administrator of Mrs. Johnson, Andrew B. Carson. He was a party defendant to the bill filed in the United States court, and by his answer submitted himself and the said "trust claim" to the jurisdiction and judgment of the court if his plea to the jurisdiction was overruled. Said administrator prayed "that in any decree his rights as administrator of said Betsy Johnson and representative of said trust debt be protected adequately and completely," and for general relief. It is surely conclusively established against Carson that we have title, and the appellant is in no better condition. The demand was a pure *money demand* and the administrator had title to it and represented every one. The rule established by our supreme court as to *property* claims does not apply, and the administrator did not fail to sue for the *chose in action.*

The view taken by the United States court of the Downing trust deed was the proper view. The suing husband took the *chose in action* secured by it. He had married in Kentucky and had migrated to this State long before any woman's law prevailed here. 2 Kent's Com.* 136 *et seq.;* 2 Bl. Com. 515, 516 ; *Hoskins* v. *Miller,* 2 Dev. N. C. 360 ; 14 Am. Dec. 140 ; 26 Am. Dec. 385 ; 24 Conn. 168 ; 26 Ib. 235 ; 22 Ib. 288 ; Ib. 528 ; 15 Ib. 598.

*W. L. Nugent* argued the case orally.

COOPER, J., delivered the opinion of the court.

On the 8th of January, 1841, Edward P. Johnson, Sr., conveyed to George Downing as trustee certain lands in the county of Washington, and a number of slaves, to be held by him in trust for Betsy W. Johnson, the wife of the grantor. The trust as expressed in the deed was, " for the sole and separate use of the said Betsy W. Johnson and her heirs forever, subject to the further trust that the said Downing shall, and he is hereby directed, and so accepts the trust, to convey in fee simple the entire portion or any part of said property to any person or persons that may be ap-

pointed by the said Betsy W. Johnson in her lifetime, or be directed by any last will and testament she may make, in default of which the said Downing is to convey the same in fee to her heirs. And the said Edward P. Johnson, for himself, his heirs, executors and administrators, the aforesaid tracts of land and slaves, and their future increase, unto the said George Downing, his heirs, executors and assigns, for the trusts and purposes aforesaid, against the said Edward P. Johnson, his heirs, executors and administrators, and against all other persons whatsoever, doth and will forever warrant and defend."

This conveyance was properly recorded on the first day of December, A. D. 1841, in the office of the probate clerk of Washington County.

By a mortgage deed of date May 18, 1844, Edward P. Johnson recited, that whereas a part of the trust estate was about to be conveyed to other persons for the sum of thirteen thousand five hundred dollars, which sum was to be paid to him, whereby he would become indebted to the said Downing trustee in said amount, and had agreed to secure the same on the lands thereinafter described, and conveyed to Downing the undivided one-half interest in certain lands in Washington County, composing a plantation known as " Avon," Habendum, " to have and to hold the aforesaid moiety of said lands, to him, the said George Downing and his heirs and assigns, for the sole and separate use of said Betsy Johnson, with the same powers as contained in said original deed of trust of January 8, 1841." This deed was also duly and seasonably recorded.

In 1863 Betsy Johnson died, not having made any charge upon or appointment of the trust estate, leaving surviving her two sons, Edward P. Johnson, Jr., and Junius L. Johnson, one daughter, Mrs. Nannie Lonsdale, and one granddaughter, the appellant, then Bettie Erwin, who was the only child of a deceased daughter. In 1866 Edward P. Johnson died testate, leaving the same persons as his heirs at-law, his estate, consisting of the " Avon " plantation, and two others known as " Ashland " and " Granicus," and a small amount of personalty was insolvent.

In 1866 letters of administration upon the estate of Betsy W. Johnson were granted by the Probate Court of Washington County to one Carson, who was the sheriff and public administrator of that county, who thereupon filed his bill in the Chancery Court of Washington County against the heirs-at-law of Edward P. Johnson, Sr., and those of Downing, the trustee, who had also died, to foreclose the mortgage of May 18, 1844. The heirs-at-law of Johnson answered, admitting the averments of the bill, and on the 22d day of November, 1866, a decree was made in said cause condemning to sale the undivided one-half of "Avon" plantation to the payment of the mortgage debt, which by said decree was found to be the sum of thirty thousand four hundred and twenty dollars.

On the 25th of March, 1867, Edward P. Johnson, Jr., the executor named in the will of Edward P. Johnson, Sr., probated the same in the Probate Court of Washington County and letters testamentary were granted to him.

In August, 1867, the Bank of Kentucky and one Duncan, creditors of Edward P. Johnson, deceased, exhibited their bill in the Circuit Court of the United States in behalf of themselves and all other creditors of said Edward P. Johnson, deceased, who should thereafter join in said suit against the executor and heirs-at-law of said E. P. Johnson and against the administrator of Betsy W. Johnson and against the firm of Thornhill & Richardson. The bill charged that the estate of E. P. Johnson was insolvent, that the executor was misappropriating the personal estate, and that he and his sureties were insolvent. It attacked the decree rendered in the State court in favor of Carson, administrator, as having been obtained by collusion, and averred that the claim set up ought not to be enforced against the estate of E. P. Johnson—first, because the debt was barred by limitations when the suit was instituted, and secondly, because by the terms of the trust deed the marital rights of the husband were not excluded, and he, having survived his wife, became entitled to the debt, which was thereby extinguished. The bill charged that Thornhill & Richardson were creditors of the estate of E. P. Johnson in a large sum, but that they had received considerable sums from the executor which ought to be

credited on their claim. The prayer of the bill was for an injunction against the execution of the Carson decree, for the appointment of a receiver to take charge of the real and personal estate, and for a sale of the entire estate and a complete and final settlement thereof. No injunction was ever granted to stay the execution of the Carson decree, but in November, 1867, a receiver was appointed who took possession of the real and personal estate. Answers were filed by the executor and adult heirs of E. P. Johnson and by the administrator of Betsy W. Johnson; a guardian *ad litem* was appointed for the appellant, then an infant, who filed an answer in common form.

In November, 1868, while the cause was pending in the Federal court and while the real estate was in the hands of the receiver appointed by that court, a sale was made by the commissioner appointed by the Chancery Court of Washington County to execute its decree in the case of *Carson, Admr.,* v. *The Heirs-at-law of E. P. Johnson,* of the undivided one-half of the " Avon " plantation, at which sale Richardson and one Fitzwilliam Lonsdale (the husband of Nannie Lonsdale), and who was then acting as guardian for the appellant and was soon thereafter appointed guardian by the probate court, became the purchaser at the sum of two thousand nine hundred dollars. This sale was reported to and confirmed by the court.

On November 22, 1869, a final decree was rendered by the Circuit Court of the United States in the case of the Bank of Kentucky and others, directing a sale of the real and personal estate of E. P. Johnson, deceased, for distribution *pro rata* among all the creditors of said estate, except that the proceeds of the Ashland plantation, which had been mortgaged by the testator to one Hanna, were directed to be applied to the satisfaction of the mortgage debt. In this decree nothing was specifically provided in reference to the claim of Carson, administrator. The claim was neither allowed nor rejected in terms, nor was there any decree cancelling the decree rendered by the State court or enjoining its execution.

On the 11th of January, 1870, a sale was made of the " Avon " and " Granicus " plantations by a commissioner appointed to exe-

cute the decree of the Circuit Court of the United States, at which sale Richardson and Lonsdale became the purchasers at the sum of thirty-one thousand dollars.   This sale was duly reported and confirmed.

In 1876 the appellant, Bettie Erwin, having come of age, exhibited in the circuit court her bill seeking a review of its decree of November 22, 1869, to which bill the defendant, Richardson, interposed a demurrer, which was sustained and the bill dismissed. In the same year she prosecuted an appeal to this court from the decree of the Chancery Court of Washington County, on which appeal the decree was reversed and the cause remanded.

This is a chronological history of the various proceedings which have been had touching the subject-matter of the present litigation. The record now before us discloses the following additional facts : In 1867, soon after the institution of the suit by the Bank of Kentucky, Thornhill and Richardson sold their debt against the estate of E. P. Johnson, deceased, which was for about the sum of seventy-eight thousand dollars, to Fitzwilliam Lonsdale and E. P. Johnson, Jr., who was the executor of E. P. Johnson, for six thousand dollars.   In the same year Richardson bought from the receiver appointed by the Circuit Court of the United States a portion of the personal estate of Johnson, consisting of mules, farming implements, etc., and rented the Avon and Granicus plantations from the receiver for the year 1868.   In this condition of affairs, and on the 23d of December, 1867, Richardson, on the one part, and Lonsdale and E. P. Johnson on the other, entered into an agreement substantially as follows : The charge in favor of the estate of Mrs. Betsy Johnson on the undivided half of "Avon" was valued at four thousand dollars.   Of this amount Richardson agreed to pay one-half. · Richardson was to be allowed a credit to an amount equal to the cost at which he bought the stock, farming implements, etc., from the receiver, and other advances made by the respective parties were to be equalized, and the rent due for Avon and Granicus was to be paid by the parties interested.   Richardson was to advance any money necessary to be used in the purchase of claims against the estate of E. P. Johnson, so as to secure a full and com-

plete title to the land, and whatever should be bought by either of them under any decree of court should belong to the parties to the agreement. Richardson was to be repaid one-half of any sum advanced by him, and the property so acquired was to belong one-half to Richardson and one-half to Lonsdale and E. P. Johnson, Jr.

On the 4th of January, 1868, Richardson purchased from E. P. Johnson, Jr., all his interest in this contract and all his right to the fund secured to Betsy Johnson by the trust deeds hereinbefore set forth, and on that day took from Johnson a written transfer of such interest. In this transfer it was stated that Bettie Erwin had one-fourth interest in said trust fund, and Johnson bound himself to indemnify Richardson against any loss which might "be occasioned to him by the assertion of her claim by Bettie Erwin, and to secure to said Richardson the said one-fourth of said estate." The consideration of this transfer and undertaking by Johnson was the sum of four thousand dollars, paid by Richardson to him.

In 1868, Junius L. Johnson died, but whether before or after the sale under the decree made by the Chancery Court of Washington County does not appear.

In October, 1870, Lonsdale and wife conveyed to Richardson the undivided fourth interest in "Avon" and "Granicus" plantations, and also the one-fourth interest in all the personal property thereon in consideration of the sum of fifteen thousand dollars paid to them by him.

In January, 1874, Richardson sold to one Peters the undivided one-half interest in Avon and Granicus for the sum of thirty-five thousand dollars. Peters has since died, and since his death there has been a partition between his heirs and Richardson, they taking Avon and paying to Richardson five thousand dollars, and he taking Granicus.

The present suit is by Bettie Erwin (now Mrs. Brockett), and is in substance a continuation of the Carson suit as to the interest which the complainant claims as heir-at-law of Mrs. Betsy Johnson, with an alternative aspect to charge Richardson as trustee for her if the Peters heirs should be held to be *bona fide* purchasers of the land on which this fund was secured. The complainant

charges that no money was paid by Richardson and Lonsdale under their purchase at the sale made by the commissioner of the Chancery Court of Washington County, and though this is denied by the defendant, Richardson, who states in his answer that he himself paid the purchase-money, his testimony shows that he paid it by accounting to Lonsdale for the amount in the settlement made between them. Carson, the administrator, testifies that he never received anything from the commissioner, and has no information that any money was ever paid. He further testifies that he remembers very little of the matters connected with his administration of this estate, having left the management of the administration wholly to his counsel, who, we think it is apparent, was employed and directed by those interested in the estate.

On the facts above set forth the propositions advanced by the appellant are, first, the Federal court did not have jurisdiction to decree a sale of the real estate of E. P. Johnson, deceased, for the payment of his debts ; secondly, if the court had jurisdiction, it decreed nothing as to the claim of Carson, administrator, and the title derived by Richardson and Lonsdale under the Federal decree is in subordination of the mortgage executed by Johnson to secure the debt due to Downing, the trustee of Mrs. Johnson ; third, that Richardson and Lonsdale, by reason of their relationship to her, cannot interpose the title thus acquired to defeat her rights, even if it is a valid and paramount title as to all others interested in the estates.

The heirs-at-law of Peters defend upon the ground that they are innocent purchasers for value, and Richardson interposes this defense and pleads the decrees of the United States court made in the original cause and on the bill of review as *res adjudicata.*

We cannot assent to the proposition advanced by counsel for the appellant, that a proceeding to sell the land of a decedent for the payment of debts is a proceeding *in rem*, and not *inter partes*, and therefore is without the jurisdiction of the Federal courts, which depends upon the fact that the parties, plaintiff and defendant, are residents of different States.

Upon the death of a debtor his estate, real and personal, is by

our laws charged with the payment of his debts, the personal estate primarily and the realty in event there is a deficiency of personalty.    Both the realty and personalty are debtors in the same sense, but to be charged in the order designated by law.    The personal estate may be reached by creditors by proceedings against the administrator alone, while to reach the realty the heirs are necessary parties to the suit.    The proposition of counsel is that while lands may be made assets if proceeded against in a particular manner prescribed by statute, they are not assets until so proceeded against.    The true view is that they are made assets by law, but. the manner in which they can be applied to the payment of debts is prescribed by statute.

It is true that at the time of the sale of lands in controversy they could not have been subjected to sale by the courts of this State upon the application of a creditor.    But this was because our laws required the petition to be filed by the administrator as the representative of creditors, and had made no provision for a suit by creditors themselves.    But the right asserted by the administrator in such cases was the right of the creditor, and the settled doctrine of the courts of the United States is, that where a right is given by a State law it will be enforced by them through their own machinery if practicable, regardless of the mere method prescribed by the statutes of the State.

The jurisdiction in equity over matters of administration, as it existed in England, has been frequently exercised, or its existence asserted, by the courts of the United States.    *Payne* v. *Hook*, 7 Wall. 425;  *Yonley* v. *Lavender*, 21 Wall. 276;  *Pratt* v. *Northam*, 5 Mason 95;  Pomeroy's Eq. Jur., § 1154.    We are unable to distinguish between an administration of personal and real estate, since by our laws both are assets for the payment of debts.

The power, however, of the Federal court to divest the right of the administrator of Betsy W. Johnson against the undivided one-half of the " Avon " plantation, as fixed by the decree of the Chancery Court of Washington County, is a totally different question, and is by no means free from difficulty.    It must be admitted that a court of equity has the power to marshal the assets of an in-

---

---

solvent estate and the claims presented against it, to convert the
estate into money and direct its application to the payment of debts,
and to decide what are valid subsisting debts.     Ordinarily, there-
fore, the allowance or rejection of a debt propounded against such
an estate would be a mere matter of error or no error, and the only
remedy for the injured party would be by an appeal from the de-
cree, but the question of error in the exercise of an admitted power
is widely different from the exclusion of a demand which has
passed into adjudication by the decree of a court of competent jur-
isdiction.     The right of the inferior courts of the United States to
review the decisions of the State courts has never been asserted,
nor is there any warrant in law for the exercise of such power. To
admit it would be to introduce conflicts disastrous in their results
to individuals, and would tend to destroy the efficiency and dignity
of the judiciary of the States.

 The manifest purpose of the bill filed by the Bank of Kentucky
was to procure a review by the Federal court of the decree ren-
dered in the Chancery Court of Washington County.     It is true,
the bill charged the decree to have been obtained by collusion, but
it is evident on the whole bill that it was not the purpose to attack
the decree as fraudulently obtained but as erroneously rendered.
The gravamen of the bill was that Carson had no right of action.
As to the demand asserted by Carson, the facts stated by him in his
bill were identical with those stated in the bill of the bank.     The
right asserted arose from the legal effect of certain deeds.     It was
lost, if at all, by the death of the beneficiary leaving her husband
still surviving.     There was no disputed fact, nor did the bank
allege that anything had been concealed from the chancery court or
any untrue statement made.     The simple proposition was that on
the facts stated the State court had decreed for Carson when it
should have decreed against him, and the Federal court was asked
to decide what the complainant thought the State court should have
decided.     These considerations lead us to the conclusion that in
order to avoid conflict of jurisdictions the decree of the Federal
court ought, if possible, to be construed as not affecting or attempt-
ing to affect the right of Carson under the decree of the State court.

There is nothing specifically provided by the decree in reference to this claim; it is neither allowed nor disallowed, and though ordinarily the rights of all parties before the court would be presumed to have been settled by the final decree, such presumption should not be entertained when its effect would be to impute to the court the exercise of unwarranted powers.

But if the decree was such as the appellee contends it is, could he invoke it against the appellant? We think he could not.

It is an admitted fact that Richardson had attempted to purchase from the co-distributees of complainant her interest in the trust fund at a price agreed on between himself and them; he took from E. P. Johnson a written guarantee against any claim which the appellant might thereafter assert; the purchase under the Carson decree was made, as he states in his answer, by "himself and Lonsdale in pursuance of said agreement" (that of December 27, 1867). Now Lonsdale at the time of the making of this contract and at the time of the purchase was guardian or acting as guardian for the appellant, and it was his duty to protect her interests in all matters pertaining to her estate. As guardian, it was his duty to realize as much from the sale of the land as possible; as buyer, it was to his interest to procure it at the least possible price. To remove all temptation to a breach of his duty the law attached to him a disability to purchase for himself. This disability exists whether the guardian acts in good or bad faith in making the purchase; it is an absolute disqualification to buy and hold against the ward, and she alone can give validity to the purchase by ratification, or by acquiescence, which is equivalent to ratification.

Richardson, who was familiar with all the facts, and who knew the extent of appellant's interest in the property, and who had in truth entered into an arrangement by which this interest was to be acquired by himself and this guardian, occupies no more favorable attitude than did Lonsdale, and if the purchase-money had been actually paid to the commissioner (which it was not) he could not have been permitted to assert as against complainant the title thus acquired, for the disability of Lonsdale became the disability of the joint purchasers. *Hoffman Coal Company* v. *Cumberland Coal*

*Company,* 16 Md. 456 ; *Miller* v. *Barber,* 66 N. Y. 558 ; *Chaplin* v. *Young,* 33 Beav. 414 ; *Massey* v. *Davies,* 2 Vesey 317 ; *East India Company* v. *Henchman,* 1 Vesey 287.  Richardson cannot now say that the sale under the Carson decree was invalid because at the time it was made the property sold was in the hands of the receiver of the Federal court.  Carson was but the representative of those claiming the estate of Betsy W. Johnson (Richardson being one), and all his actions were directed by them.  The sale must, therefore, be referred to their action, and they should not now be permitted to say that it was ineffectual because the proceeding was in contempt of the Federal court.

The appellant, having on her former appeal reversed the decree of the Chancery Court of Washington County, must now establish anew the validity of the charge upon the undivided one-half of " Avon " under the deeds of 1841 and 1844, for this is the foundation of her right.  We think the trust deeds settled a separate estate upon Mrs. Johnson free from the marital rights of her husband, the grantor, and that on the death of the wife the beneficial interest passed by the terms of the conveyances to those who were her heirs-at-law, *viz.:* E. P. Johnson, Junius L. Johnson, Mrs. Lonsdale, and the appellant.  *Taylor* v. *Stone,* 13 S. & M. 652 ; *Smith* v. *Henry,* 35 Miss. 369.  Nor was the demand barred by limitation, for the coverture of the wife prevented the running of the statute as to her, and though the trustee might have been barred her equity was not.  *Bacon* v. *Gray,* 23 Miss. 140 ; *Fearn* v. *Shirley,* 31 Miss. 301 ; *Pearson* v. *McMillan,* 37 Miss. 588 ; *Anding* v. *Davis,* 38 Miss. 574 ; *Kilpatrick* v. *Bush,* 23 Miss. 199.

Mrs. Johnson died in 1863 and her husband in 1866, at both of which times all statutes of limitation in this State were suspended. From these views it follows that Lonsdale and Richardson held an interest in the undivided one-half of " Avon " proportionate with the interest of complainant in the trust fund charged thereon as trustee for her.

The record does not disclose the date of the death of Junius L. Johnson. If it occurred before the sale under the decree of the State court complainant became entitled to one-third instead of one-

fourth of the trust fund, unless it be true, as the complainant's bill suggests, that Junius L. had sold his interest to Lonsdale and Richardson. The heirs of Peters occupy the position of *bona fide* purchasers for value. There is nothing in the records affecting them with notice of the fiduciary relation in which Lonsdale stood to the complainant, and they are not to be injured by the secret infirmity of his title.

*Decree reversed.*